Kennebec Box and Lumber Company, Inc. v. Commissioner.
Kennebec Box & Lumber Co. v. Commissioner
Docket No. 11421.
United States Tax Court
1947 Tax Ct. Memo LEXIS 205; 6 T.C.M. (CCH) 544; T.C.M. (RIA) 47136; May 19, 1947
*205 Herbert E. Locke, Esq., 284 Water St., Augusta, Maine, for the petitioner. C. W. Nyquist, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined deficiencies in income tax, declared value excess profits tax, and excess profits tax for 1941 in the respective amounts of $9,060.88, $1,197.89 and $5,862.69. The petition raises only one issue. It is whether petitioner is taxable in 1941 upon gain realized from the involuntary conversion of property into money. Petitioner's mill and inventory were destroyed by fire. It received insurance proceeds in excess of the basis of the property which was destroyed. Petitioner contends that it is entitled to postpone recognition of the gain under the provisions of section 112(f) of the Internal Revenue Code. Petitioner filed its returns with the collector for the district of Maine. The record consists of a stipulation of facts, testimony and exhibits. Findings of Fact The stipulation of facts is incorporated herein by this reference and is made part of the findings of fact. Petitioner, a Maine corporation, was organized in February 1934, and was *206 engaged during the taxable year 1941 in the manufacture and sale of lumber, boxes, and box shooks. Petitioner kept its books and made its returns on the accrual method of accounting and on a calendar year basis. Petitioner's lumber mill and yards were located in South Gardiner, Maine, near the Kennebec River. A fire, on June 9, 1941, destroyed substantially all of the mill and part of the inventory. The mill and inventory were insured against fire. Petitioner recovered fire insurance proceeds totalling $118,552.99. The adjusted basis of the destroyed mill was $39,655.60. The basis of the destroyed inventory was $21,838.67; total bases, $61,494.27. On November 4, 1941, petitioner purchased all of the capital stock, except three qualifying shares of directors, of Augusta Lumber Company, 987 shares for $113,454.99. The value of the assets of Augusta Lumber Company was determined by an appraisal made by an independent appraiser experienced in valuing lumber, timber and sawmills. The selling price of the Augusta stock was determined by the values of the assets of Augusta. The assets of Augusta were appraised as having a total value of $113,454.99. The parties have stipulated that *207 Augusta's assets similar to those of petitioner which were destroyed by fire had a value of $55,788.94; and that its other assets had a value of $57,666.05. The Augusta Lumber Company had a mill on the Kennebec River at Augusta, Maine, about ten miles above the site of petitioner's plant which was destroyed by fire. Augusta Lumber Company was engaged in the manufacture of lumber and in the sale of lumber and building supplies, and was capable of serving the area previously served by petitioner. Petitioner, after the destruction of its mill, made a survey to acquire another plant and mill. It was not satisfied with the results of the survey. It considered rebuilding a mill but found that plan inadvisable because it could not acquire special machinery. Upon concluding that it could not rebuild its mill nor make a satisfactory purchase of another mill, petitioner purchased the stock of Augusta. Petitioner purchased the stock of Augusta from Kennebec Land Company, a Maine corporation. Kennebec Land Company owned the stock of petitioner. Kennebec Land Company was engaged in the business of selling timber land, logs, stumpage and pulp. On separate occasions, Kennebec Land Company *208 acquired all the stock of petitioner and Augusta Lumber Company for the purpose of keeping each corporation in operation after each one had experienced financial difficulties. The three corporations have maintained at all times separate business offices. Petitioner and Augusta had been customers of Kennebec Land Company prior to the time Kennebec Land acquired the stock of each company. During 1941, 95 per cent of the stock of Kennebeck Land Company was owned by Blaine S. Viles and his wife. Viles was president of the three corporations. Kennebec Land Company reported gain of $29,043.10 on the sale of the stock of Augusta Lumber Company to petitioner in its return for 1941. After the purchase of the Augusta Lumber Company stock by petitioner, the Augusta Lumber Company continued to do business in its own name and continued to operate its own plants and sawmills in the same manner as it had done previously. After petitioner acquired the stock of Augusta Lumber Company petitioner's business activities were restricted to selling lumber which had not been destroyed by the fire and to finishing up operations at its portable mills. These activities continued on into 1942 and 1943 *209 and constituted petitioner's only business activities. At the beginning of the year 1941, petitioner carried good will on its books at a valuation of $6,000. At the end of the year good will was written down to zero. There was a mortgage on the destroyed mill of petitioner. Petitioner, in July 1941, used $33,730.55 of the insurance proceeds which it received after the destruction of the mill to discharge the mortgage. The above amount was withdrawn from a special bank account which petitioner opened on July 28, 1941, in which petitioner, in July, deposited $105,152.48 of insurance proceeds. Petitioner made other withdrawals from the special bank account for general purposes, after depositing insurance proceeds in the account. These other withdrawals aggregated $18,200.21. Petitioner borrowed $33,730.55 from Kennebec Land Company in September 1941, for the purpose of restoring that amount to the special account. It made deposits at various times in August and September in the special bank account from its own funds, aggregating $18,200.21. In this way as of the end of September 1941, the balance in the special bank account was $105,152.48, which equalled the total amount of *210 three deposits of insurance proceeds which were deposited in the special account in July 1941. On November 4, 1941, petitioner received the last payment of insurance in the sum of $13,400.51, and it deposited that amount in the special account. The balance in the account thereafter was $118,552.99. On November 4, petitioner withdrew from the account $113,454.99 and paid that sum to Kennebec Land Company for the stock of Augusta Lumber Company. After this withdrawal, the balance in the account was $5,098. Petitioner did not apply to the Commissioner for permission to establish a replacement fund in its accounts. In its returns for the taxable year 1941 petitioner reported gain from involuntary conversion relating to the fire insurance proceeds in the amount of $5,098, being the difference between the total fire insurance proceeds in the amount of $118,552.99 and the $113,454.99 expended in the purchase of the Augusta Lumber Company stock. The amount of the fire insurance proceeds recovered on the destruction of the petitioner's mill and a portion of its inventory, which petitioner has traced into the payment for the Augusta Lumber Company stock, does not exceed $61,524.23. $57,028.76 *211 of the insurance proceeds were not expended in the purchase of the Augusta stock. Opinion The general question is whether petitioner is entitled to postponed recognition of gain in 1941 upon the involuntary conversion of property under the provisions of section 112(f). [1] The gain is $57,058.72. Petitioner concedes that it did not expend $5,098 of the insurance proceeds in any of the ways specified in section 112(f). Respondent has determined that petitioner is taxable in 1941 on gain in the above amount. *212 Several questions have been argued by the parties on brief. Consideration has been given to all of the questions. It is necessary, however, to decide only one - whether petitioner expended the proceeds of insurance in the acquisition of the Augusta Lumber Company stock. Petitioner is required by section 112(f) to prove that it "forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended" the money received upon the involuntary conversion of its property in one of three ways prescribed. Petitioner elected to expend most of the money received "in the acquisition of control of a corporation owning" property similar to the property which was destroyed. The pertinent regulation, Regulations 103, section 19.112(f)-1 provides in part as follows: "In order to avail himself of the benefits of section 112(f) it is not sufficient for the taxpayer to show that subsequent to the receipt of money from a condemnation award he purchased other property similar or related in use. The taxpayer must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but the taxpayer *213 must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. * * *" * * *
It is an established rule of law that in order to obtain the benefit of section 112(f), the taxpayer must show by proper evidence that it has used money received in the conversion for the purchase of property acquired to replace the lost property; that the required proof of such use involves tracing the money received into payments for other property; and that the requirement is not satisfied where the taxpayer uses the money received for general purposes and, subsequently, uses other money for the purchase of the new property. Frischkorn Development Co., 30 B.T.A. 8, 15, and see headnote; aff'd., 88 Fed. (2d) 1009. The statutory provision contains a specific requirement that money proceeds of a conversion shall be applied, in the process of replacing the lost property, under regulations prescribed by the Commissioner. The regulation quoted above has been in effect for a long period of time. It requires that the actual money received in theversion shall be used in the acquisition of new property. The *214 requirement that the taxpayer must trace the money into similar property has been approved and compliance with the requirement has been held to be a prerequisite to obtaining relief under section 112(f). See Commissioner v. Flushingside Realty Co., 149 Fed. (2d) 572, 573, where it is said, "* * * and the regulations require owners so to trace the awards." Cf. Estate of George Herder, 36 B.T.A. 934, 941, (appealed on other points), where it was said that the evidence was positive and uncontradicted that the taxpayer deposited the money in bank "and used it to reinvest in the new mill." In Bandes v. Commissioner, 69 Fed. (2d) 812, the taxpayer received payment of an award from New York City for condemnation of real estate. The taxpayer purchased other real estate but used his own funds in payment. The facts are different from the facts here, but the rationale in the Bandes case fits the situation with which this case is concerned. The Court said in the Bandes case, that there was a conversion of condemned property into the money paid for it by the city and that "the inquiry must be whether the petitioner expended the money in the manner required *215 by the statute as a condition precedent to nonrecognition of gain or loss." The Court clearly stated that approval could not be given to the general proposition that "* * * regardless of how it [the money received under conversion of property] is actually expended, the new property may be considered to have been acquired out of the award. This would leave nothing to the statute except that the taxpayer must acquire new property with an intent to substitute it for old. The language is much too specific to be capable of that construction." In this case petitioner has shown exactly what it did with insurance proceeds. It has traced some of the proceeds to payment for the stock. Therefore, it is entitled to non-recognition of some of the gain. But it has with equal clarity shown that $33,730.55 of the proceeds was used to pay a mortgage, and that various withdrawals out of the fund of the proceeds were expended for uses not related to acquisition of stock of Augusta but, it appears, were spent for "general purposes." The evidence is that $61,524.23 of the insurance proceeds were expended in the purchase of stock of Augusta, and that the balance of the purchase price ($51,930.76) *216 of the Augusta stock was paid by using $33,730.55 which was borrowed from Kennebec Land Company, and $18,200.21 of petitioner's own funds. Under the rationale of the Bandes case these latter amounts can not be regarded as other than they were; they were not out of the insurance proceeds. Accordingly, it is held that only $61,524.23 of the insurance proceeds was used in the acquisition of control of Augusta Lumber Company. It is held, further, that $57,028.76 of the insurance proceeds, (which includes the unexpended part of the proceeds, $5,098), was not expended in the acquisition of control of Augusta Lumber Company. Findings of fact to that effect have been made. It follows, under the last sentence of section 112(f), that the gain shall be recognized in 1941 to the extent of $57,028.76. Respondent, under his determinations, has held that petitioner is taxable in 1941 on gain in the amount of $57,058.72. Respondent's determination is in error to the extent of only $29.96. It is unnecessary to decide other questions which have been presented under the general issue in view of the above holdings. However, it should be stated that we agree with the contention of the petitioner that *217 there was only one conversion of property, even though the property consisted of two classes, a mill and some inventory. This proceeding was submitted under a stipulation of facts which did not permit treating the destruction as resulting in two separate losses of property. The insurance proceeds have not been shown to have been paid under contracts which gave separate coverage to the mill and separate coverage to the inventory. Also, the parties in their stipulation did not show the value of the inventory of Augusta and of its mill which were treated by the parties as constituting property similar to that destroyed. While this latter point may or may not be of importance, it serves to illustrate that this case was tried on the theory that there was only one conversion of property into money in the amount of $118,522.99. Since the case was tried on that theory, the question has been decided upon that theory. Respondent may have to make some changes in the details of his original computation of the taxable income but such revisions will not affect the amounts of the taxes due. Decision will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(f) Involuntary Conversions. - If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat of imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.↩