ESTATE OF GEORGE HERDER, DECEASED, MARY HERDER, ALMA WILLIAMS, VIDA ALLEN, AND GEORGE HERDER, JR., EXECUTRICES AND EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY HERDER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. L. WILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALMA WILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 84000, 84001, 84051, 84052. Prmulgated November 24, 1937.

*Charles T. Byers, Esq.,* for the petitioners.
*Edward A. Tonjes, Esq.,* and *Allen T. Akin, Esq.,* for the respondent.

OPINION.

HILL: We shall take up first the cases of R. L. Williams and his wife Alma Williams, Docket Nos. 84000 and 84001. One of the errors alleged by them was that the respondent erred in including in their income certain salary paid R. L. Williams. No evidence was taken on this issue and the finding of the respondent thereon is approved.

These petitioners next object to the determination of the respondent fixing the amount of the profit resulting from the burning of the rice mill, and the inclusion of R. L. Williams' share of the proceeds as taxable profit or income. We agree that the findings of the respondent as to the cost of the mill and profit are correct, but we do not think the share of R. L. Williams is taxable. Williams collected his share of the insurance money in March 1934, and thereafter had the continuing purpose to reinvest it in similar property. Soon after the death of George Herder he endeavored to reinvest it in a mill at Eagle Lake. A flaw in the title caused a delay of six months, after which, with due diligence, Williams reinvested his part of the insurance money in the Gulf Coast Rice Mill on or about May 1, 1935. Under all the circumstances we think this was a reasonable time and hold that he made the reinvestment in similar property forthwith and in good faith. We hold, therefore, that under section 112 (f) of the Revenue Act of 1934 no gain should be recognized for tax purposes, notwithstanding no replacement fund was established and no permission for such fund was had from respondent under article 112 (f)–2 of Regulations 86.

In the recent case of *August Buckhardt*, 32 B. T. A. 1272, we held that under the facts there the lapse of over two years between the conversion of taxpayer's property and reinvestment in similar property without the permission of the Commissioner to establish a replacement fund under article 580 of Regulations 74 was within the provisions of section 112 (f) of the Revenue Act of 1928, and no gain should be recognized. Section 112 (f) of the Revenue Act of 1934 is the same as section 112 (f) of the Revenue Act of 1928. Article 112 (f)–2 of Regulations 86 is the same as article 580 of Regulations 74 in respect to the requirement of permission of the Commissioner to establish a replacement fund.

There is a sufficient parallelism between the facts of the instant case and those of *August Buckhardt, supra*, to justify our merely citing it in support of our holding here.

We have examined the cases of *Eastern Steamship Lines, Inc.*, 17 B. T. A. 787, *John J. Bliss*, 27 B. T. A. 803, and *Frishkorn Development Co.*, 30 B. T. A. 8, cited and relied upon by the respondent, but we do not think they are applicable or decisive of this case, as in those cases the evidence was unsatisfactory as to the disposition and

reinvestment of the converted funds. In the instant cases the evidence is positive and uncontradicted that Williams deposited the money in bank and used it to reinvest in the new mill.

The alleged gain on the insurance fund is not taxable to R. L. Williams or his wife, Alma Williams.

As there was no reinvestment of the insurance funds collected by George Herder, his share of the insurance fund is taxable as ordinary income for the period January 1 to March 29, 1934. Section 117 (a) provides: "In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income." We hold that the involuntary conversion of the rice mill by its destruction by fire was not a sale or exchange. *John H. Watson, Jr.*, 27 B. T. A. 463; *Arthur E. Braun, Trustee*, 29 B. T. A. 1161; *M. P. Sturdivant*, 23 B. T. A. 1385; *Echols* v. *Commissioner*, 61 Fed. (2d) 191, and the profit derived therefrom is taxable as ordinary income.

Deductions for bad debts are claimed in Docket Nos. 84051 and 84052 in the cases, respectively, of George Herder, deceased, and Mary Herder. The debts claimed as deductible are set forth in the findings of fact and total $29,975.56. One-half of this amount, or $14,987.78, is claimed as such deduction by each petitioner. However, at the hearing petitioners abandoned such claim as to the debt of J. W. Gates (dairy farm) for the amount of $1,861.22. Accordingly, the claim of deduction for the amount of this debt will be disallowed.

The evidence shows that the other debts in question were worthless. The debtor, Emil Herder, died in 1932 or 1933, leaving no estate. Jackson Brothers were hopelessly insolvent in 1932 and their financial condition grew worse after that time. They had been rice farmers, but prior to 1934 had given up farming and moved away. These debts were unquestionably worthless prior to 1934 and are, therefore, not deductible within the taxable periods here involved. The debtors Wilbur Webb, Matthews Brothers, L. P. Bunge, Mrs. J. N. Frazar, and W. R. Terrell were farmers who for many years had been financed in their operations by the decedent and to whom they were each indebted far beyond the value of their assets. There was some basis for believing that these debts would be paid in whole or in part provided the debtors could continue to produce crops. They could not continue their farming operations without the extension of credit for groceries and supplies and other financial support. Such credit had been furnished by George Herder up to the time of his death. He was their only source of credit and financial backing. Upon his death these debtors became hopelessly insolvent and the debts then became worthless.

The applicable provisions of the statute for deduction of bad debts is section 23 (k) of the Revenue Act of 1934, and is as follows:

(k) BAD DEBTS.—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

The statute is silent as to how and where or in what manner bad debts are to be charged off. However, as was said by the court (C. C. A., 6th Cir.) in *Fairless* v. *Commissioner*, 67 Fed. (2d) 475:

It was clearly the purpose of the Congress to condition allowance of deduction for bad debts upon the perpetuation of evidence that they were ascertained to be worthless within the taxable year, and upon some specific act of the taxpayer clearly indicating their abandonment as assets.

In line with this expressed view of the court we adhere to our holding in *Carl G. Stifel, Trustee*, 7 B. T. A. 1060, that:

The charging off of bad debts should, in the case of a taxpayer keeping regular books of account, be evidenced by such book entries as will effectually eliminate the amount of the bad debt from the book assets of the taxpayer.

See also *Britton Lumber Co.*, 20 B. T. A. 583.

The debts in question were never charged off on the books of the petitioners, but are still carried as assets thereon. The deduction of the debts on the income tax returns of petitioners did not constitute a charge-off. Such deduction could only be allowable as the result of a previous ascertainment of the worthlessness of the debts and a charge-off thereof within the taxable period. The mere ascertainment of worthlessness is not sufficient to authorize the deduction. We hold that the debts were never charged off and that the claim of deductions for bad debts must be disallowed.

There was interest in the amount of $5,518.01 earned, but unpaid, on debts owing the community of George Herder and Mary Herder, his wife, at the time of the death of the former. Respondent added one-half of this amount to the income of decedent in determining the deficiency against him under the following provision of section 34 of the Revenue Act of 1934: "In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period."

A list of the debtors, the debts on which the interest accrued, and the amounts of the interest so accrued is set forth in the findings of fact herein.

Petitioners claim that respondent erred in adding the amount of interest in question to decedent's income for the reason, as they contend, that the interest so accrued was not collectible. The evidence

shows that E. R. and Anna Frnka owed Herder two notes—one for $5,073.57 and the other for $4,460.38. The first note had collateral security consisting of 50 shares of stock in the Garwood Lumber Co. of a par and book value of $5,000. The second note mentioned was unsecured. R. L. Williams testified that the interest accrued on these notes was uncollectible. No effort had been made, however, to subject the collateral security to the payment of the interest on the note it secured. Considering the substantial value of the security in comparison with the amount of the note, we can not find that there was not a reasonable expectation that the interest on that note would be paid. We hold, therefore, that one-half of the interest accrued thereon up to the time of the death of decedent should be added to his income. As to the other and unsecured Frnka note the evidence is that there were no assets out of which payment of the interest accrued thereon could be made and that the debtors were unable to pay it. We think it clearly appears from the evidence that there was no reasonable expectation that such interest would ever be paid.

The evidence shows that the debtors W. J. Wright, Matthews Brothers, E. P. Schilling, and Mrs. J. U. Frazar had no available assets out of which payment of the interest accrued on their debts could be realized and that the debtors were unable to pay such interest. It appears from the evidence that it was reasonably certain that such interest would never be paid. We hold, therefore, that the interest accrued, but unpaid, on these debts and on the unsecured Frnka note did not constitute income to George Herder and should not be so considered in determining the deficiency against him. There can be no accrual of income where there is no income. *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34; *Turners Falls Power & Electric Co.*, 15 B. T. A. 983; *Great Northern Railway Co.*, 8 B. T. A. 225.

The agreement of the parties hereto at the hearing that Mary Herder realized a capital gain of $1,498.50 in the sale of mineral lands will be given effect in the redetermination of the deficiency against her.

*Judgment will be entered under Rule 50.*