*Decision will be entered under Rule 50.*

MIHRAN AND MABEL DEMIRJIAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF ANNE DEMIRJIAN, DECEASED, FRANK DEMIRJIAN, EXECUTOR, AND FRANK DEMIRJIAN, SURVIVING SPOUSE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5565–68, 5569–68. Filed September 1, 1970.

*Ralph Neibart*, for the petitioners.
*William M. Gross*, for the respondent.

RAUM, *Judge:* Mabel Demirjian and Anne Demirjian were sisters-in-law. In 1962 certain property held by them allegedly in an equal partnership was sold in an involuntary condemnation proceeding, and the proceeds were distributed equally to them. Each reinvested a portion of her share of the proceeds in like property. At issue is whether the nonrecognition-of-gains provisions of section 1033, I.R.C. 1954, are applicable where the actual reinvestments were made individually and in separate properties by Mabel and Anne rather than by the partnership. The answer depends upon whether section 703 relating to partnership elections is controlling in respect of the reinvestment of condemnation proceeds under section 1033 and whether the so-called partnership in controversy was actually a partnership within the statute. Petitioners also raise an issue in the nature of an estoppel. The facts have been stipulated.

During 1962 Mabel was married to Mihran Demirjian, and Anne was married to Frank Demirjian. Each couple filed a joint income tax return for 1962. The Commissioner determined a deficiency in the income tax of Mihran and Mabel in the amount of $6,891.67, and in the amount of $6,148.62 in respect of the income tax of Frank and the estate of Anne, who had since died. The only matter in dispute relates to the claimed nonrecognition under section 1033 as affected by section 703. All the taxpayers resided in New Jersey when the petitions herein were filed.

Anne and Mabel had each owned 50 percent of the stock of Kin-Bro Realty Corp. which acquired title in October 1944 to certain rental property (the property) at 1001 Broad Street, Newark, N.J. Pursuant to a plan of dissolution and complete liquidation of that corporation, adopted on November 3, 1960, the property was conveyed by deed to "Anne Demirjian * * * and Mabel Demirjian, * * * partners trading as Kin-Bro Real Estate Company." The formal aspects of the deed to accomplish the transfer were "attended to" by their attorney, Ralph Neibart, and their accountant, A. Lester Granet.

There was no written partnership agreement entered into between Anne and Mabel. However, on November 7, 1960, Anne and Mabel filed over their signatures a "Trade Name Certificate" with the Essex County Clerk in which they represented that they "intend[ed] to transact business" under the name of "Kin-Bro Real Estate Company," that the business referred to was "that of real estate investment," and that the place where the business was intended to be conducted was 1001 Broad Street, Newark, N.J. The certificate further stated that since Mabel was not at that time a resident of New Jersey, she appointed the Essex County Clerk as her lawful attorney upon whom

process might be served in any action "against the said firm," and that such authority should continue "so long as the said firm shall do or transact business in the State of New Jersey under the aforesaid firm name."

On September 12, 1962, pursuant to an involuntary condemnation proceeding, the property was sold to the Newark Housing Authority. The deed of conveyance to the Housing Authority sets forth the grantors as "Anne Demirjian and Mabel Demirjian, partners trading as Kin-Bro Real Estate Company."

Partnership income tax returns for Kin-Bro Real Estate Co. were filed with the district director of internal revenue, Newark, N.J., for the taxable years 1960 to 1962, inclusive.

On Schedule D, line 4, of the 1962 partnership return filed for Kin-Bro Real Estate Co. as "Kin-Bro Realty" the condemnation sale was shown as follows: "Land & Building Condemnation Sale—intend to Purchase Similar Property." The schedule disclosed that the property was acquired in 1944, and sold on September 12, 1962, at a gross sales price of $140,000. Depreciation allowed since acquisition was shown at $14,820 and cost or other basis was shown to be $45,150. The gain on the sale was computed as $109,670. Although this gain was not reported as income of the partnership, Schedule K of the return listed the shares of Anne and Mabel in such gain ($54,835 for each) in a column bearing the handwritten caption "Condemnation Sale." However, no amount of such gain was reported or disclosed in the 1962 joint returns filed by the petitioners.

The property consisted of a three-story building fronting on Broad Street and extending in the rear to West Kinney Street. The ground floor facing Broad Street was occupied by Demirjian Bros., Inc., a corporation, whose stock was owned by Frank Demirjian and Mihran Demirjian.

The following schedule shows the tenants, the space occupied, and the monthly rentals at the time of the condemnation sale:

### 1001 BROAD STREET

| Tenant | Space | Monthly rental |
|---|---|---|
| Demirjian Bros., Inc. | Ground floor | $300 |
| William Spieghts | 2d floor front | 100 |
| Jewish Literary Guild | 2d floor rear | 35 |
| Bruce Campbell | 3d floor front | 50 |
| James McGuire | 3d floor rear | 45 |

### 15–17 W. KINNEY STREET

| | | |
|---|---|---|
| Andrew F. Cronin, Jr | 1st floor | 100 |
| National State Bank of Newark | 3d floor | 75 |
| Vacant | 2d floor | 0 |

The only change in tenants between the dissolution of Kin-Bro Realty Corp. and the conveyance to the housing authority was that the second floor front, which had been initially occupied by the Temperance League at a monthly rental of $120, was subsequently occupied by Mr. Spieghts at a rental of $100 per month.

There were no leases prepared or executed during the aforesaid period. Several of the tenants had leases which had been made with Kin-Bro Realty Corp., and the other tenants were on month-to-month oral tenancies.

Monthly checks prepared by the tenants in payment of their respective rentals were made payable to "Kin-Bro Realty." The rental payments were delivered to Anne, Mabel, or their husbands at the premises occupied by Demirjian Bros., Inc., and were deposited in a checking account entitled "Anne Demirjian and Mabel Demirjian, trading as Kin-Bro Real Estate Company." Expenses consisting of insurance, real estate taxes, heat, light, water, service charges, professional fees, and supplies were paid from the aforementioned checking account.

Minor repairs and maintenance were performed by a handyman employed by Demirjian Bros., Inc. All decisions regarding the operation of the building were made by Anne and Mabel in consultation with their husbands.

Partnership capital accounts were maintained to which profits from the operation of the rental property were credited and withdrawals from the partnership checking account were charged.

Subsequent to the sale of the property Mabel and Anne each received from Kin-Bro Real Estate Co. an amount equal to approximately 50 percent of the "net proceeds" of the sale. The comparative balance sheet for the partnership, which was included in its 1962 return, shows that there were "withdrawals and distributions" during 1962 in the aggregate amount of $115,000, or $57,500 each for Mabel and Anne, and that the only assets remaining in the partnership as of December 31, 1962, were cash in the amount of $1,460.02 and an item designated "Notes and accounts receivable" in respect of "Rents" in the amount of $3,000. The various items comprising the "Liabilities and Capital" portion of the balance sheet as of the beginning of the year had been completely eliminated as of December 31, except the "Partners' capital accounts," which were stated to be $4,460.02 (the aggregate of the remaining cash and account receivable), or $2,230.01 each for Mabel and Anne.

Kin-Bro Real Estate Co. did not replace the property which had been sold in the condemnation proceeding and which was its only operating asset.

Out of her share of the partnership distribution Anne on April 15, 1963, invested $40,934.05 in real estate which was similar or related in service or use to the condemned property.

In October of 1963, Mabel made written application to the district director of internal revenue, Newark, N.J., for an extension of time in which to use her share of the amount realized on the involuntary conversion for the purchase of other property similar to the condemned property in order to qualify under the nonrecognition-of-gain provisions of section 1033, I.R.C. 1954. In a letter dated January 16, 1964, to Mabel, the district director granted the requested extension "for the purpose of replacing your share of the partnership property that was owned by Kin-Bro Real Estate Company (a partnership)." The extension was until December 31, 1964.

Out of her share of the partnership distribution Mabel on February 7, 1964, invested $45,711.17 in real estate which was similar or related in service or use to the condemned property.

Neither Anne nor Mabel included any portion of the gain realized on the condemnation sale in their respective returns initially filed by them and their husbands for the taxable year 1962.

During the taxable year 1964, Mabel and Anne and their husbands filed amended 1962 joint income tax returns wherein each couple reported as recognizable long-term capital gain that portion of the gain equal to the excess of 50 percent of the net proceeds of the condemnation sale over the cost of the respective property which the wife subsequently acquired. Their computations of such recognizable gains are summarized as follows:

| | Anne | Mabel |
|---|---|---|
| 50-percent interest in proceeds of condemnation sale (after "expenses") | $65,425.00 | $65,425.00 |
| Cost of newly acquired property | 40,934.05 | 45,711.17 |
| Gain recognized | 24,490.95 | 19,713.83 |

The Commissioner disagreed with this treatment, and, in his determinations of deficiency, he stated:

It is determined that in calendar year 1962 you must report a long-term capital gain of $54,835.00 from the sale by Kin-Bro Realty, a partnership, of premises located at 1001 Broad Street, Newark, New Jersey, since no election under I.R.C. Section 1033(a)(3)(A) or replacement of property was made by the partnership in accordance with I.R.C. Section 703(b). * * *

The Commissioner argues that the condemned rental property here in issue was owned by a partnership consisting of Anne and Mabel Demirjian, and that, in order to take advantage of the nonrecognition-of-gain provisions of section 1033(a), I.R.C. 1954, upon the reinvestment of the proceeds of the condemnation, the election to do so includ-

ing the replacement of the condemned property must be made by the partnership and not the individual partners. The petitioners maintain that Anne and Mabel owned the condemned property as tenants in common, not as partners, that, in any event, they complied with the provisions of section 1033 and that the Commissioner is estopped to deny the nonrecognition of gain because of the district director of internal revenue's representations to petitioner Mabel Demirjian. We agree with the Commissioner.

1. *Partnership.*—Bearing in mind that the burden of proof is upon petitioners, *George Rothenberg*, 48 T.C. 369, 373, we cannot find on this record that Anne and Mabel held title to the condemned property merely as tenants in common rather than as partners. They carried on the business of operating that property in corporate form for a number of years, and when the corporation was liquidated in 1960 they continued the venture without any apparent break in continuity. The property was conveyed to them as "*partners* trading as Kin-Bro Real Estate Company" (emphasis supplied), and the subsequent conveyance to the Newark Housing Authority describes them in the same manner. The trade name certificate filed by them identifies a "business" conducted under the name of Kin-Bro Real Estate Co. and refers several times to that enterprise as the "said firm" or the "aforesaid firm." In addition, they reported the income from the rental property on partnership returns in which Anne and Mabel were identified as partners and in which there was a comparative balance that reflected the usual partners' capital accounts to which profits from the business were credited and against which withdrawals or distributions were charged. Certainly, there was a representation, at least to the Internal Revenue Service, that they were operating the property as a partnership, cf. *Maletis* v. *United States*, 200 F. 2d 97, 98 (C.A. 9).

To be sure, no one of these elements may be conclusive, and indeed there is even some ambiguity as to some of them. Thus, the deed to Anne and Mabel as "partners" recited, among other things, that the conveyance was "unto the said party of the second part ['Anne * * * and Mabel * * * partners * * *'], and to their *heirs*" (emphasis supplied). Again, under New Jersey law the mere filing of a trade name certificate may not be determinative of the existence of a partnership under State law. *Nat'l. Prem. Budget Plan Corp.* v. *Nat'l. Fire Ins. Co.*, 97 N.J. Super. 149, 225, 234 A. 2d 683, 729, affirmed 106 N.J. Super. 238, 247, 254 A. 2d 819, 823 (App. Div.), certification denied 54 N.J. 515, 257 A. 2d 113. But even as to this aspect of the case, section 1.761-1(a) of the regulations[1] makes clear that "The term

---

[1] Sec. 1.761-1 Terms defined.

(a) *Partnership*—(1) *In general.* The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not a corporation

'partnership' is broader in scope than the common law meaning of partnership."

We are, of course, fully aware of the sentence in the regulations to the effect that "Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership." But a critical element in applying this provision is the presence or absence of an *intention* to carry on a business or venture as a partnership, with the consequence, for example, that coowners of inherited properties who have not indicated an intention to operate such properties in partnership have generally not been regarded as partners. Cf. *Gilford* v. *Commissioner*, 201 F. 2d 735, 736 (C.A. 2); *Estate of Edgar S. Appleby*, 41 B.T.A. 18, affirmed 123 F. 2d 700 (C.A. 2). In the present case, however, we think that Anne and Mabel have indicated an intention to carry on the business of their former corporation as a partnership, and that the following language from the same regulations more aptly describes the situation before us:

Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if coowners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent.

The property in question was leased to some seven or eight different tenants, and it appears from the stipulated facts that Kin-Bro Real Estate Co. paid expenses, *inter alia*, for light, water, and heat. Certainly, Anne and Mabel were providing some services to the occupants either directly or through someone acting for them. While it is true that these services may have been less impressive than those in *George Rothenberg*, 48 T.C. 369, we cannot say that this case is not on the same side of the line as *Rothenberg*.

In sum, the record shows that Anne and Mabel intended to and in fact did carry on their prior corporate venture in partnership form, and that they operated the business property conveyed to them

or a trust or estate within the meaning of the Code. The term "partnership" is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships. See section 7701(a)(2). See regulations under section 7701 (a) (1), (2), and (3) for the description of those unincorporated organizations taxable as corporations or trusts. A joint undertaking merely to share expenses is not a partnership. For example, if two or more persons jointly construct a ditch merely to drain surface water from their properties, they are not partners. Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if coowners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent.

as partners. Petitioners have failed to prove otherwise. We now consider the principal question in issue.

2. *Election by Individual Partners.*—Petitioners next contend that even if Kin-Bro Real Estate Co. were to be recognized as a partnership, each individual partner was nevertheless entitled to make the election and qualify for the nonrecognition benefits of section 1033 upon her individual reinvestment of a portion of her share of the proceeds.[2]

Section 1033(a),[3] I.R.C. 1954, provides that if property is compulsorily or involuntarily converted into money and if the taxpayer purchases other property similar to the property converted, at the election of the taxpayer, the gain shall be recognized only to the extent that the amount realized upon the conversion exceeds the cost of the other property. There is no dispute here as to whether the rental property in issue was involuntarily converted into money; nor is there any controversy as to whether the property was replaced in a timely manner with similar property. The dispute is simply whether Anne and Mabel, as individuals, can take advantage of these provisions. The Commissioner contends that they cannot because of the provisions of section 703(b), I.R.C. 1954. That section provided:[4]

SEC. 703. PARTNERSHIP COMPUTATIONS.

(b) ELECTIONS OF THE PARTNERSHIP.—Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that the election under section 901, relating to taxes of foreign countries * * *

---

[2] Petitioners do not argue that the election was in fact made by the partnership, and there is at least substantial doubt whether they could benefit from such an argument. For, although there was a fragmentary statement in the partnership return looking in that direction ("Land & Building Condemnation Sale—intend to Purchase Similar Property"), it has been stipulated that "Kin-Bro Real Estate Company did not replace the rental property." And, the election under sec. 1033(a)(3)(A) is available only "If the taxpayer * * * for the purpose of replacing the property so converted, purchases other property similar or related in service or use." There were in fact two reinvestments, each of which was made separately and in different amounts and at different times by the individual partners. Petitioners' sole argument on this aspect of the case is that the sec. 1033 election was open to the individual partners rather than to the partnership.

[3] SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

* * * * * * *

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other

Since section 1033(a) provides that an election be made as a condition of its applicability, and since section 703(b) provides that "Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership," the Commissioner argues that the election to take advantage of section 1033(a) could be made only by the partnership and not by the partners as individuals.[5] We agree.

Section 703(b) specifically applies to all elections, with exceptions not applicable here, affecting the computations of income derived from a partnership. And, the recognition or nonrecognition of gain on the involuntary conversion of property would affect such a computation. Consequently, the election to take advantage of section 1033 falls within the literal terms of section 703(b). Moreover, the only exception in the Code governing liability for the tax year before us, 1962, was with respect to section 901, relating to foreign tax credits,[6] thus indicating an understanding by Congress that only in respect of foreign tax credits was the election to be available to the individual partners; in all other situations the election was one that was required to be made by the partnership.

Petitioners argue that the partnership was not called upon to elect and replace the involuntarily converted property because the language of section 1033(a) specifies that such election and replacement be made by "the taxpayer." Since a partnership is not subject to tax by virtue of section 701, I.R.C. 1954,[7] they argue that the partners, who

property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. For purposes of this paragraph—

[4] These provisions have since been twice amended, first by sec. 3(b) of Pub. L. 89–570 which was effective for taxable years ending after Sept. 12, 1966, and the second time by sec. 504(c)(3) of the Tax Reform Act of 1969 (Pub. L. 91–172), effective after Dec. 31, 1969. As thus finally amended, sec. 703(b) now reads:

SEC. 703. PARTNERSHIP COMPUTATIONS.

(b) ELECTIONS OF THE PARTNERSHIP.—Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that the election under section 901, relating to taxes of foreign countries and possessions of the United States, and any election under section 615 (relating to pre-1970 exploration expenditures) or under section 617 (relating to deduction and recapture of certain mining exploration expenditures), shall be made by each partner separately.

[5] The Commissioner's position is set out in Rev. Rul. 66–191, 1966–2 C.B. 300. Compare Rev. Rul. 70–376, I.R.B. 1970–29, 15, relating to trusts, which was promulgated after the trial of this case. Petitioners rely upon this latter ruling in a communication addressed to the Court after the submission of briefs herein. However, the trust provisions of the Code do not contain any requirement comparable to sec. 703(b) relating to partnerships which we find controlling here.

[6] Several other exceptions were added by subsequent legislation affecting later years. See fn. 4 *supra*.

[7] SEC. 701. PARTNERS, NOT PARTNERSHIP, SUBJECT TO TAX.

A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.

are subject to tax in respect of partnership income, may make the election and replacement under section 1033(a). While we agree that a partnership is not a "taxpayer" under the Code, the legislative history of section 703(b) indicates that the partnership is nonetheless the only entity to make elections affecting income derived from a partnership. The report of the House Committee on Ways and Means states in connection with section 703(b):

> The bill provides that all elections with respect to income derived from a partnership (other than the election to claim a credit for foreign taxes) are to be made at the partnership level and not by the individual partners. *This rule recognizes the partnership as an entity for purposes of income reporting.* It avoids the confusion which would occur if each partner were to determine partnership income separately for his own purposes. [H. Rept. No. 1337, 83d Cong., 2d Sess., p. 66 (1954). Emphasis added.]

See Willis, Handbook of Partnership Taxation 110–111 (1957).

By requiring elections affecting the income derived from a partnership to be made at the partnership level, section 703(b) is intended to avoid the inconsistent treatment of items of income by different members of a partnership. And, the election to replace involuntarily converted property is the very kind of election which, if not made at the partnership level, would result in the confusing and inconsistent treatment of items of partnership income which the section was intended to proscribe. Thus, the partnership was the only "taxpayer" which could make an election under section 1033(a), and its failure to replace the property as required by section 1033(a) must therefore result in the recognition of the gain on the sale.

Petitioners also argue that since the proceeds of the condemnation would have been long-term capital gains described by section 702(a)(2),[8] the character of the gain when reported as income by the partners was, pursuant to section 702(b),[9] to "be determined as if such item were realized directly from the source from which realized by the partnership." Accordingly, each partner could, they contend, treat the proceeds of the condemnation as if the partnership did not exist, and thereby take advantage of section 1033. A similar argument was made and rejected in *George Rothenberg*, 48 T.C. at 374:

---

[8] SEC. 702. INCOME AND CREDITS OF PARTNER.

(a) GENERAL RULE.—In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—

\* \* \* \* \* \* \*

(2) gains and losses from sales or exchanges of capital assets held for more than 6 months, \* \* \*

[9] SEC. 702. INCOME AND CREDITS OF PARTNER.

(b) CHARACTER OF ITEMS CONSTITUTING DISTRIBUTIVE SHARE.—The character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share under paragraphs (1) through (8) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership.

It may be added that the petitioners make much of the provision of section 702(b) of the Code, which provides that the character of any item of income included in a partner's distributive share shall be determined as if such item were realized directly from the source from which realized by the partnership. Suffice it to say that such provision relates to the *character* of the item, and not to the method or time of reporting the item.

Petitioners also seek to support their position by relying on *R. L. Williams*, reported with *Estate of George Herder*, 36 B.T.A. 934. There an individual partner was permitted to defer recognition of a gain under section 112(f), I.R.C. 1939, the predecessor of section 1033(a), where he reinvested the proceeds of an insurance award paid in respect of the destruction of partnership property. Though that case is factually in point, it was decided prior to the enactment of the partnership provisions of the 1954 Code, and, in light of the purposes of section 703(b), it has no controlling effect here.

3. *Estoppel.*—Finally, petitioners argue that the Commissioner is estopped to deny petitioners' election under section 1033 because this treatment of the proceeds of the involuntary conversion was implicitly approved by the district director of internal revenue in Newark by his letter of January 16, 1964. The series of letters between Mabel's attorney and the district director with respect to her request for an extension of the time in which to replace the converted property indicates that the district director knew that Anne and Mabel each intended to reinvest her separate share of the proceeds of the condemnation in similar property; it is likewise clear that he did not object to this course of action. However, the petitioners have not shown that their decisions to reinvest the proceeds of the condemnation individually were made in reliance upon the district director's representations. To the contrary, the record shows that Mabel first communicated with the district director in connection with her replacement of the rental property in October of 1963. But the proceeds of the condemnation had already been distributed to the individual partners during the previous year, and by October 1963 Anne and Mabel had long decided to treat their shares of the sale proceeds individually as is shown by the further fact that Anne had already reinvested her share of the proceeds as of April 15, 1963. Thus, the decision to replace the involuntarily converted property as individuals was made before the district director entered the picture. See *Bornstein* v. *United States*, 345 F. 2d 558, 563 (Ct. Cl.). Moreover, even if petitioners had relied on representations of the Internal Revenue Service the doctrine of estoppel does not prevent the Commissioner from correcting errors of law. *Automobile Club of Michigan* v. *Commissioner*, 353 U.S. 180, rehearing denied 353 U.S. 989.

*Decisions will be entered for the respondent.*