MORTON FUCHS AND HARRIET M. FUCHS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21820–80.    Filed March 8, 1983.

*Lawrence J. Lee*, for the petitioners.
*Walter T. Thompson*, for the respondent.

OPINION

STERRETT, *Judge*: By notices of deficiency dated September 25, 1980, and November 25, 1980, respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1971 | $7,518 |
| 1972 | 500 |
| 1973 | 260 |
| 1974 | 15,138 |
| 1975 | 6,231 |
| 1976 | --- |
| 1977 | 3,117 |

After concessions, the sole issue remaining for our decision is whether, with respect to partnership property, the election under section 1033, I.R.C. 1954, may be made by a partner who has withdrawn from the partnership, or whether such election and replacement must be made by the partnership itself.

The facts in this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

Petitioners Morton Fuchs and his wife, Harriet M. Fuchs, resided in Tucson, Ariz., at the time of filing the petition herein. Harriet M. Fuchs is a party to this proceeding solely by reason of having filed a joint income tax return with Morton Fuchs (hereinafter petitioner). They filed joint Federal income tax returns for each of the taxable years 1971 through 1977 with the District Director, Internal Revenue Service Center, Phoenix, Ariz.

Petitioner Morton Fuchs is a medical doctor. In 1960, he formed a partnership in Pennsylvania with two other doctors for the purpose of owning and managing a medical building. Petitioner owned a 25-percent interest in the partnership, and the other two partners owned the remaining 75-percent interest. The building contained nine suites. The three doctors occupied three of the suites for purposes of conducting their medical practice and leased the remaining six suites to unrelated parties. By 1969, disputes arose among the three partners and relations among them deteriorated. As a result, petitioner gave notice in July of 1969 that he was terminating his interest in the partnership and moved to Arizona.

In May of 1971, the medical building was condemned, and petitioner's share of the proceeds from the condemnation, which amounted to $39,235, was distributed to him in September of the same year. On his 1971 income tax return, petitioner

elected, pursuant to section 1033(a), to defer recognition of his gain attributable to the condemnation of the building and to reinvest the proceeds in qualifying property. However, no such election was made by the partnership on its return for 1971.

Petitioner was treated as a partner on the partnership's 1971 return, and for the taxable years 1971 through 1974 he continued to report receipts from the partnership as partnership income on his individual income tax returns. In 1975, petitioner received additional proceeds from the building's condemnation in the amount of $13,455. He again elected on his return for that year to defer recognition of the gain and reinvest the proceeds in qualifying property pursuant to section 1033(a).

In his notices of deficiency, respondent determined that petitioner was not entitled to the benefits of section 1033(a) on the grounds that no proper election had been made by the partnership. Accordingly, respondent asserted that petitioner's gain on the involuntary conversion of $37,803 in 1971 and $13,455 in 1975 must be recognized in the year realized.

Section 1033(a) provides that if property is compulsorily or involuntarily converted into money and the taxpayer, within the prescribed period, purchases other property similar to the property converted, the taxpayer may elect to recognize gain only to the extent that the amount realized upon the conversion exceeds the cost of the other property. There is no dispute in this case with respect to whether the medical building was involuntarily converted into money. Similarly, there is no controversy concerning whether petitioner replaced the property in a timely manner with similar property. The sole issue for decision is whether petitioner, as an individual, is entitled to make an election under section 1033(a).

Respondent contends that an election by petitioner in his individual capacity is invalid and that the election to defer recognition of gain realized from an involuntary conversion of partnership property must be made by the partnership. In support of this contention, respondent relies on section 703(b) which provides:

SEC. 703. PARTNERSHIP COMPUTATIONS.

(b) ELECTIONS OF THE PARTNERSHIP.—Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership * * *

Petitioner, however, asserts that he should be allowed to make an election under section 1033(a) in his individual capacity since the partnership was dissolved prior to the condemnation of the medical building. By reason of the prior dissolution of the partnership, petitioner insists that it is impractical to require the partnership to make the section 1033 election since there was no partnership.

Section 708(a) sets forth the general rule that an existing partnership shall be considered as continuing if it is not terminated. Section 708(b)(1)(A) provides that "a partnership shall be considered as terminated only if no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership."

A termination of a partnership is thus distinct from a mere dissolution of a partnership. This distinction is recognized by the Uniform Partnership Act, in effect in the State of Pennsylvania, which provides:

PART VI

DISSOLUTION AND WINDING UP

Section 29. *Dissolution Defined.* The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

Section 30. *Partnership Not Terminated by Dissolution.* On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed. [Uniform Partnership Act, Part VI, secs. 29–30, 59 Pa. Stat. Ann. secs. 91–92 (Purdon 1964).]

The regulations promulgated under section 708 also reflect this distinction. Section 1.708–1(b)(1)(i), Income Tax Regs., provides:

(b) *Termination* —(1) *General rule.* (i) A partnership shall terminate when the operations of the partnership are discontinued and no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership. For example, on November 20, 1956, A and B, each of whom is a 20-percent partner in partnership ABC, sell their interests to C, who is a 60-percent partner. Since the business is no longer carried on by any of its partners in a partnership, the ABC partnership is terminated as of November 20, 1956. However, where partners DEF agree on April 30, 1957, to dissolve their partnership, but carry on the business through a winding up period ending September 30, 1957, when all remaining assets, consisting only of cash, are distributed to

the partners, the partnership does not terminate because of cessation of business until September 30, 1957.

Thus, even though the partnership dissolved in 1969 when petitioner withdrew and ceased to be associated with the carrying on of partnership business, there continued to be a valid partnership until such time as the partnership was actually terminated.

The partnership in this case was not terminated until at least 1975. This conclusion is supported by the fact that the partnership continued to file tax returns after its dissolution in 1969. Furthermore, petitioner was treated as a partner on the partnership's 1971 return and continued to report receipts from the partnership as partnership income on his individual tax returns for the taxable years 1971 through 1974. These facts indicate that the partnership was not terminated upon its dissolution in 1969 but rather continued to carry on business through a winding-up period for several years.

The treatment of payments to a retiring partner is governed by section 736. The regulations thereunder provide:

(ii) A partner retires when he ceases to be a partner under local law. However, for purposes of subchapter K, chapter 1 of the Code, a retired partner or a deceased partner's successor will be treated as a partner until his interest in the partnership has been completely liquidated. [Sec. 1.736–1(a)(1)(ii), Income Tax Regs.]

Since petitioner was treated as a partner on the partnership's 1971 income tax return and continued to report receipts from the partnership as partnership income on his individual income tax returns for the taxable years 1971 through 1974, he obviously still had an interest of some dimension in the partnership through at least 1974 despite his prior withdrawal. In point of fact, petitioner's interest in the partnership probably was not liquidated completely until at least 1975 when he received additional proceeds from the building's condemnation and, therefore, according to section 736, petitioner remained a partner for Federal income tax purposes until that time. Consequently, although the partnership may have dissolved for State law purposes when petitioner withdrew in 1969, for Federal income tax purposes the partnership did not terminate then, and petitioner remained a partner for several years thereafter.

However, despite the fact that the partnership was not

terminated by its dissolution in 1969, petitioner argues that the partnership termination rules should not be extended to other areas of the Code such as section 1033 and that partners in a dissolved partnership should be permitted individually to make a section 1033 election. We do not agree.[1] We have held previously that in the case of a partnership, the election under section 1033 can be made only by the partnership and not by the partners, individually. *McManus v. Commissioner*, 65 T.C. 197, 216 (1975), affd. 583 F.2d 443 (9th Cir. 1978), cert. denied 440 U.S. 959 (1979); *Demirjian v. Commissioner*, 54 T.C. 1691, 1700 (1970), affd. 457 F.2d 1 (3d Cir. 1972). Establishing a contrary rule for dissolved but not terminated partnerships would be inconsistent and would create a potentially abusive situation.

Section 31 of the Uniform Partnership Act enumerates a number of events which can cause a dissolution of a partnership.[2] Often when such events occur, a partnership will not

---

[1]Of interest is the following comment from 1 A. Willis, J. Pennell & P. Postlewaite, Partnership Taxation, par. 3.02, at 3–4 (3d ed. 1982), where it is stated:

"A Private Letter Ruling covered the case where the partnership was dissolved by withdrawal of a medical director partner in a partnership which owned and managed a medical building. Two years later, the medical building was condemned. The withdrawn partner elected under §1033(a), but the partnership filed no election. The Ruling correctly holds that the medical partnership was not terminated under §708(b) at the time the building was condemned and that only the partnership could file the §1033(a) election. [Fn. refs. omitted.]"

[2]Sec. 31, Uniform Partnership Act, Part VI, provides:

Section 31. *Causes of Dissolution.* Dissolution is caused:

(1) Without violation of the agreement between the partners,

(a) By the termination of the definite term or particular undertaking specified in the agreement,

(b) By the express will of any partner when no definite term or particular undertaking is specified,

(c) By the express will of all the partners who have not assigned their interests or suffered them to be charged for their separate debts, either before or after the termination of any specified term or particular undertaking,

(d) By the expulsion of any partner from the business bona fide in accordance with such a power conferred by the agreement between the partners;

(2) In contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time;

(3) By any event which makes it unlawful for the business of the partnership to be carried on or for the members to carry it on in partnership;

(4) By the death of any partner;

(5) By the bankruptcy of any partner or the partnership;

(6) By decree of court under section 32.

[59 Pa. Stat. Ann. sec. 93 (Purdon 1964).]

terminate but rather will continue its operations in the same manner as prior to its dissolution. Allowing partners of such dissolved partnerships to make a section 1033 election individually while continuing as partners both in practice and for tax purposes, clearly would be violative of Congress' intent in enacting section 703(b).[3]

Accordingly, we hold that in the case of a dissolved partnership which is not terminated for Federal income tax purposes, the election to defer recognition of gain under section 1033(a) must be made at the partnership level pursuant to section 703(b). Thus, petitioner's election under section 1033(a) was invalid for the taxable years in question, and respondent's determination must be sustained.

*Decision will be entered for the respondent.*

---

[3]As was stated in *Demirjian v. Commissioner,* 457 F.2d 1, 5–6 (3d Cir. 1972), affg. 54 T.C. 1691 (1970):

"Section 703(b) provides, with exceptions not relevant here, that any election which affects the computation of taxable income derived from a partnership must be made by the partnership. The election for nonrecognition of gain on the involuntary conversion of property would affect such computation and is the type of election contemplated by §703(b). The partnership provisions of the Internal Revenue Code treat a partnership ·as an aggregate of its members for purposes of taxing profits to the individual members and as an entity for purposes of computing and reporting income. In light of this entity approach to reporting income, Congress included §703(b) to avoid the possible confusion which might result if each partner were to determine partnership income separately only on his own return for his own purposes. To avoid the possible confusion which could result from separate elections under §1033(a), the election must be made by the partnership as an entity, and the failure of the partnership to so act results in the recognition of the gain on the sale of partnership property. [Fn. refs. omitted.]"