SIRRINE BUILDING NO. 1, M. ALLEN WINTER, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sirrine Bldg. No. 1 v. Commissioner
Docket No. 7211-93
United States Tax Court
T.C. Memo 1995-185; 1995 Tax Ct. Memo LEXIS 186; 69 T.C.M. (CCH) 2476; April 20, 1995, Filed *186 An appropriate order will be issued, denying petitioner's motion to strike and petitioner's motion to dismiss for lack of jurisdiction. For petitioner: Thomas E. Redding. For respondent: Gerald L. Brantley. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: This matter is before the Court on petitioner's motion to dismiss for lack of jurisdiction filed December 22, 1993, pursuant to Rule 40. [1]
In her notice of final partnership administrative adjustments (hereinafter FPAA) dated January 25, 1993, respondent determined that Sirrine Building No. 1 (Partnership) failed to report long-term capital gain for tax year 1985, [2] in the amount of $ 3,514,339. *187 The tax matters partner, M. Allen Winter (petitioner), does not deny that Partnership failed to report capital gain. He alleges instead that the gain should have been reported in 1982; that Partnership incorrectly reported the transaction as an installment sale in 1982, 1983, and 1984; that Partnership was terminated and dissolved prior to December 31, 1984, and thus had no obligation to file (and did not file) a return for 1985; and that Partnership is thus not subject to the audit and deficiency procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324 (TEFRA) for 1985 because it was no longer in existence. Therefore, petitioner contends, the Court lacks subject matter jurisdiction. FINDINGS OF FACT Petitioner's address was Brenham, Texas, at the time the petition was filed. Partnership's principal place of business was Houston, Texas. Petitioner filed a motion to dismiss for lack of jurisdiction on December 22, 1993. Respondent filed a response on March 3, 1994. Petitioner then requested and received permission to file a response to respondent's response. Concurrently, petitioner moved to strike certain exhibits included with respondent's *188 response. Respondent then requested and received permission to amend her answer. Without objection, respondent filed her amended answer on June 22, 1994. The following facts are not in dispute. Partnership was formed in 1979 for the purpose of acquiring land, constructing a building thereon, and then leasing or selling the building and land. It financed the construction through an insurance company with a $ 7 million note secured by a first lien on the property. In 1981, Partnership sold the building for $ 11,247,464: A $ 2,265,000 cash downpayment and an $ 8,982,464 [3] wraparound mortgage. The buyer purchased the building subject to, but not assuming, the $ 7 million note. The gain on the sale was properly reported under the installment method of accounting. In 1982, [4] the buyer paid off $ 2 million of the wraparound mortgage and assumed the remaining balance *189 of the $ 7 million note, thereby, in effect, paying off the entire purchase price. The wraparound deed of trust was released by Partnership in accordance with the terms of the wraparound note. The parties agree that Partnership should have recognized gain on the unrecognized installments in 1982, because that was the year in which Partnership was relieved of indebtedness on the building, thereby "collapsing" the installment transaction. Partnership did not, however, report the gain on the unrecognized installments in 1982. Instead, it continued to report the transaction as an installment sale for the taxable years 1982, 1983, and 1984. Partnership attached to the returns balance sheets and schedules of partnership accounts that *190 reflected the $ 8,982,464 note, minus applicable payments, [5] as a note receivable. Partnership did not file a return for 1985 (when the period of limitations for 1982 had apparently expired). The December 31, 1984, balance sheets filed with the 1984 partnership return reflect the following: Assets: Note receivable
$ 6,866,983 Deferred loan costs
71,962 Total assets
6,938,945 Liabilities & owners equity:
All nonrecourse loans
6,866,983 Total gain (on installment sale)
3,514,339 Total liabilities
10,381,322 Partners' capital accounts
(3,442,377)
Total liabilities & owners equity
6,938,945 Respondent contends that the 1982 events did not cause the termination of Partnership and that the financial statements attached to its *191 1984 return demonstrate that Partnership had not completed, or even embarked upon, the winding-up process. [6]
OPINION As a preliminary matter, on April 18, 1994, petitioner filed a motion to strike Exhibits A through E from respondent's response to petitioner's motion to dismiss. Exhibits *192 A, B, and C are copies of the 1982, 1983, and 1984 partnership returns, respectively. Exhibits D and E are copies of the individual income tax returns for 1983 and 1984 of petitioner. Petitioner contends that those exhibits contain unsupported allegations and have not been properly documented as true and complete exhibits, citing rule 56(e) of the Federal Rules of Civil Procedure and District Court cases requiring affidavits and sworn or certified copies of documents. Petitioner argues that "an authenticated copy with supporting affidavit by a proper custodian of the Service's records" is required for the Court to consider these documents. We disagree. We fail to see what would be gained by requiring respondent to submit an affidavit with these documents, and it is not required under Rule 121(b). Except for some handwritten notations (which we disregard and which are irrelevant), respondent's exhibits appear regular on their faces. Exhibits B through E are signed and dated. Exhibit A is signed and dated by the return preparer, but not by a partner. However, this exhibit (the 1982 partnership return) was also submitted by petitioner himself as exhibit C attached to his Motion *193 to Dismiss. Respondent's Exhibits A, B, and C appear to be retained copies from petitioner's own files. Moreover, petitioner's Exhibits E and F are the first pages of the 1983 and 1984 partnership returns, complete copies of which were provided as respondent's Exhibits B and C. Petitioner thus has no ground to complain that respondent has attached the same documents, or more complete copies of the same documents petitioner asks us to consider. Respondent's Exhibits D and E have receipt stamps in the center of their first page and document locator numbers in the upper righthand corner of page 1 -- indicating they are copies of returns received by respondent, which were filed by petitioner in his individual capacity. Moreover, petitioner sought and received leave of Court to reply to respondent's response to his motion to dismiss. He could have, but did not, offer any alternative version of any of these exhibits. Petitioner has not shown any basis for questioning the authenticity of the exhibits. As statements of a party opponent, the returns are admissions under rule 801(d)(2) of the Federal Rules of Evidence.
For all of the foregoing reasons, petitioner's motion to strike *194 will be denied. We now turn to the primary question at hand. The question of jurisdiction is a fundamental question that can be raised by either party, or the Court. Naftel v. Commissioner, 85 T.C. 527, 530 (1985). We have jurisdiction to determine whether we have jurisdiction. Pyo v. Commissioner, 83 T.C. 626, 632 (1984). Jurisdiction must be shown affirmatively, and the burden of proof in establishing jurisdiction is upon the party claiming its existence. Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 180 (1960); Elms Sec. Corp. v. Commissioner, T.C. Memo. 1987-162; American Police & Fire Found., Inc. v. Commissioner, T.C. Memo. 1981-704; see also Consolidated Cable, Ltd. v. Commissioner, 995 F.2d 222 (5th Cir. 1993), affg. without published opinion [7] *195 T.C. Memo. 1990-657. [8] This case is appealable to the Court of Appeals for the Fifth Circuit. [9]
Since respondent is the proponent of jurisdiction in this case, she must prove that subject matter jurisdiction exists. The quantum of proof required is a preponderance of the evidence. Irwin v. Veterans' Administration, 874 F.2d 1092 (5th Cir. 1989), affd. 498 U.S. 89 (1990). In a partnership action for readjustment of partnership items, this Court has jurisdiction when the Commissioner has mailed a valid notice of FPAA, and the tax matters partner *196 or other eligible partner has timely filed a petition with the Court, seeking a readjustment of partnership items. Rule 240(c). The FPAA is to the litigation of partnership items the equivalent of the statutory notice of deficiency in other cases. It is the notice given to affected taxpayer-partners of the Commissioner's final administrative adjustment for specific partnership tax years. If the notice is not valid, we lack subject matter jurisdiction. Clovis I v. Commissioner, 88 T.C. 980 (1987); Maxwell v. Commissioner, 87 T.C. 783, 788-789 (1986). Petitioner contends that Partnership was terminated before 1985, and it did not file a partnership return in 1985; thus, he argues that it is not subject to the unified partnership audit and litigation procedures and that the FPAA issued by respondent is invalid. Respondent counters as follows: Partnership reported an installment sale in 1981 and continued to consistently report the installment sale as an ongoing transaction in 1982, 1983, and 1984. On its face Partnership's 1984 return was not a final return. The returns thus reflect continuing partnership activity. *197 Therefore, Partnership was required to file a return in 1985. We agree with respondent that we have jurisdiction over this proceeding. The test for determining whether an entity is a partnership is whether considering all the facts -- the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationships of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent -- the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.
Commissioner v. Culbertson, 337 U.S. 733, 742 (1949). Here there is no question that at one time a partnership existed. The issue concerns whether it terminated before 1985. [10] The intent of the partners is a question of fact. Id. at 741. *198 Section 708(a) provides that an existing partnership shall be considered as continuing if it is not terminated. Section 708(b), in pertinent part, provides that a partnership shall be considered terminated only if no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership. Sec. 708(b)(1)(A). While State law generally determines when the partnership dissolves, the question of termination of a partnership for Federal tax purposes is determined by Federal law. A termination of a partnership is thus distinct from a mere dissolution of a partnership. Fuchs v. Commissioner, 80 T.C. 506, 509 (1983). A partnership's taxable year closes on the date on which the partnership terminates. Sec. 1.708-1(b)(1)(iii), Income Tax Regs. The date of termination is, for purposes of section 708(b)(1)(A), the date on which the winding up of the partnership affairs is completed. Sec. 1.708-1(b)(1)(iii)(a), Income Tax Regs.
The Partnership agreement provided: Upon dissolution a proper accounting shall be made of the Joint Venture's assets, liabilities and operations from the date *199 of the last previous accounting to the date of dissolution. The profits or losses realized subsequent to the date of dissolution shall be allocated in accordance with Article VI and proper adjustments made to the Capital Accounts of each Venturer.
Although petitioner contends that the partnership was terminated "prior to January 1, 1985", he does not tell us what the termination date was. In his affidavit attached to the motion to dismiss, petitioner opines that "The 1982 events constituted, as a matter of law and pursuant to Article X of the Joint Venture Agreement, the complete dissolution, winding up, and termination of the partnership." However, in his "response to respondent's response" petitioner states: If, in fact, the Partnership return for 1983 reflects the activities asserted by Respondent, Respondent may be correct that the Partnership did not terminate in 1982 but continued for tax law purposes into 1983 * * * * However, the continued existence of the Partnership until 1983 is not evidence of its continuing existence in 1985. * * * * Clearly, by the end of 1983, all of the affairs of the Partnership had been wound up, and only the preparation and filing of *200 tax returns, reflecting the error of S. E. Sirrine Company [a partner] and its accountants in continuing to report the sale on the installment method, continued. There was no continuing business or financial activity or joint venture being conducted by the partners and all affairs of the Partnership had been wound up, including distribution of all of its assets and satisfaction of all of its indebtedness. Whether the Partnership technically terminated in 1982 or 1983 is irrelevant for purposes of determining whether or not it continued in 1985.
Petitioner is mistaken in his view that the specific termination date is irrelevant, because "an existing partnership shall be considered as continuing if it is not terminated." Sec. 708(a) (emphasis added). Moreover, the 1983 and 1984 partnership returns do, in fact, show continuing financial activity. The partnership return for 1983 reports a continuing business enterprise and continued financial operations. It shows accounts payable reduced from $ 1,400 to zero. It shows trade accounts of $ 2,969. Partnership was reimbursed by the general contractor for liabilities to subcontractors which had been accrued and capitalized. *201 This required the recomputation of the gross profit ratio to determine the proper amount of the reported installment to be included in income. Partnership wrote off a bad debt in the amount of $ 1,624. It incurred deductible expenses for professional fees of $ 525. It continued to deduct interest on the wraparound note. As respondent says: The fact that the partnership was hiring professionals and paying them for services rendered, writing off uncollectible debts, deducting interest, receiving reimbursement for liabilities that had been capitalized and adjusting the tax books for recomputation of the proper gross profit ratio indicates that the partnership continued its business and financial operations during the taxable year 1983.
The return for 1984 continues to reflect financial activity, though at a reduced level. It reflects a continuing enterprise. In addition to continuing the installment treatment of the sale, Partnership reported $ 697,539 of interest income and $ 707,056 in losses. The return reflects unfinished business, in that the partnership had not settled accounts between partners with respect to their capital contributions and in accordance with the *202 partnership agreement. According to the return, for tax accounting purposes the partners' capital accounts totaled $ 3,454,598 on January 1, 1984, and $ 3,442,337 on December 31, 1984. The financial statements attached to the return report partners' capital accounts individually and as a total. An entire schedule is devoted to reporting changes in the partners' capital accounts as a result of transactions of the partnership during the year. Information contained in a tax return is an admission by the taxpayer and indicative of the partners' intention to continue the partnership. In Fuchs v. Commissioner, 80 T.C. 506 (1983), we concluded that a partnership was not terminated until at least 1975, even though the partnership dissolved in 1969 when the taxpayer withdrew and ceased to be associated with the carrying on of partnership business. Our conclusion was supported by the fact that the partnership continued to file tax returns after its dissolution, and the taxpayer continued to report receipts from the partnership. Here, Partnership filed returns through 1984, and petitioner reported partnership income (losses) on his individual Federal income *203 tax returns through at least 1984. The Partnership's return for 1984 reflects that as of the end of that year, no "proper accounting had been made of the assets, liabilities, and operations from the date of the last previous accounting to the date of dissolution", and the individual partners' capital accounts had not been brought to zero, as required by the partnership agreement upon dissolution. In short, the winding up was not completed by December 31, 1984. There was no termination for Federal tax purposes. Sec. 1.708-1(b)(1)(i), Income Tax Regs.
Based on this record, we find that the partnership was not terminated before January 1, 1985, and was thus required to file a partnership return for 1985. The FPAA is therefore valid, and we have jurisdiction to decide this case. To reflect the foregoing, An appropriate order will be issued, denying petitioner's motion to strike and petitioner's motion to dismiss for lack of jurisdiction.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year at issue, unless otherwise indicated.↩
2. The FPAA simply indicates "Tax year ended: 1985". Par. 5 of the petition states: "The FPAA was issued for the alleged Partnership's alleged taxable year ended December 31, 1985". Respondent's answer "Denies and alleges that the FPAA is for adjustments for the taxable period ending August 23, 1985". However, in par. 7 of her response to petitioner's motion to dismiss, respondent states: "The partnership was on a calendar year reporting period." For purposes of this opinion, we will simply refer to "tax year 1985" or "1985".↩
3. The "wraparound" promissory note consisted of $ 2 million due to Partnership directly and a balance of $ 6,982,464 due on the $ 7 million note.↩
4. In respondent's amendment to amendment to Answer, par. 10 a., respondent states: "On or about February 1, 1992, the partnership was relieved of liability on indebtedness secured by a deed of trust on the building." We assume "1992" is a typographical error, which should have read "1982".↩
5. The $ 2 million was paid on the principal in 1982, directly to the Partnership. The principal amount, as well as the amount due on the note, decreased on each succeeding Partnership balance sheet; there is no indication of who received the payments.↩
6. Respondent also contends that, since Partnership did not report the completed sale in 1982, it had a duty to file a final partnership return reporting the gain in 1985. That is, petitioner misled respondent by continuing to report the transaction as an installment sale through 1984 and should be estopped from now asserting that the proper tax treatment required gain recognition in 1982 instead of 1985. Petitioner, of course, contends that the statute of limitations has run on tax year 1982, and respondent cannot determine the tax on the transaction to be reportable in 1985 when it was properly reportable in 1982, and no income was in fact received in 1985. However, the estoppel issue is not before us on the instant motion.↩
7. "47.5.3. Unpublished opinions. Unpublished opinions are precedent. However, because every opinion believed to have precedential value is published, an unpublished opinion should normally be cited only when it (1) establishes the law of the case * * *. If an unpublished opinion is cited, a copy shall be attached to each copy of the brief." 5th Cir. R. 47.5↩.3. Here, petitioner did attach a copy of the unpublished opinion.
8. Although the Court of Appeals affirmed our result, they did not agree with our reasoning. Our decision indicated that because the FPAA was valid on its face, the taxpayer had the burden of proof in regard to subject matter jurisdiction, not the Commissioner. See Consolidated Cable, Ltd. v. Commissioner, T.C. Memo. 1990-657, affd. without published opinion 995 F.2d 222↩ (5th Cir. 1993).
9. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).
10. Cf. Chef's Choice Produce, Ltd. v. Commissioner, 95 T.C. 388, 396↩ (1990). There, adjustments to 1982 and 1983 were made by FPAA dated Dec. 23, 1987. The taxpayer argued that the FPAA was invalid because the partnership had dissolved or terminated no later than February 1986. The Court concluded that the applicability of TEFRA must be determined at the end of the tax years adjusted.