GENE FORREST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Forrest v. Commissioner
Docket No. 861-77.
United States Tax Court
T.C. Memo 1978-239; 1978 Tax Ct. Memo LEXIS 275; 37 T.C.M. (CCH) 1033; T.C.M. (RIA) 78239; June 27, 1978, Filed Gene Forrest, pro se. Michael A. Mayhall, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1974 in the amount of $ 812.44. The issues for decision are: (1) Whether petitioner is entitled *278 to have his tax computed on a basis other than that of a married person filing a separate return, and (2) Whether the Commissioner is estopped to deny petitioner the right to compute his tax other than on the basis of a married person filing a separate return. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, who resided in Fort Lee, New Jersey at the time of the filing of the petition in this case, timely filed an income tax return for the taxable year 1974 which he signed on April 14, 1975. On this return he checked the filing status of "Unmarried Head of Household" and computed his tax accordingly. During the taxable year 1974, petitioner was married to Marcia Forrest and until July 1 of that year they resided together in East Brunswick, New Jersey with their minor son, David. Petitioner and Marcia Forrest were legally divorced in October 1975. The judgment of divorce filed October 24, 1975, provided for the payment by petitioner of alimony and child support and for Mrs. Forrest to have custody of the child. The judgment also provided: FURTHER ORDERED that the defendant shall save the plaintiff harmless from any and *279 all income taxes due the Internal Revenue Service to and including the date of the signing of this Order, for which the parties may become obligated now or in the future, whether said income tax obligation is as a result of earnings from working, or earnings from stocks, bonds, or bank accounts, or earnings of any nature whatsoever; FURTHER ORDERED that the defendant shall be entitled to claim the infant child on his income tax return as a dependent; On July 9, 1974, the Superior Court of New Jersey, Chancery Division, Middlesex County, entered an order for pendentelite support, requiring petitioner to pay support and maintenance to his wife, and on August 21, 1974, entered an order for an increase in pendentelite support. The original order for pendentelite support contained the following provisions: ORDERED, that the defendant shall pay to the plaintiff for the support and maintenance of the plaintiff and the parties' son, David Forrest, (unallocated) pendentelite, the sum of $ 350.00 per month commencing as of May 31, 1974, until further Order of this Court; and it is further ORDERED, that the plaintiff shall sign the 1973 Joint Federal *280 Income Tax Return prepared by the defendant, a copy of which has already been supplied by the defendant to the plaintiff and the defendant shall indemnify and hold the plaintiff harmless from any liability in connection with the signing of the aforesaid Joint Income Tax Return; * * * After petitioner and Mrs. Forrest ceased to reside together in 1974, the principal place of abode of petitioner's minor son, David, for the balance of 1974 was the residence of Mrs. Forrest. Petitioner did not share the residence with his wife and child after July of 1974. In March 1975 petitioner called the Internal Revenue Service office in Newark, New Jersey and requested to be advised how he should file his 1974 income tax return. He was advised that he could either choose to file a joint return with Mrs. Forrest or to file as head of a household. Petitioner computed his tax both ways and determined that less tax resulted from filing as head of a household. His return was audited and petitioner was told by the auditor that he had overpaid his tax by $ 100 and a refund would be made to him. Three months later petitioner received in the mail a document entitled "Revised Report." This document *281 was on a printed form entitled "Report of Individual Income Tax Audit Changes." On the report, dated December 1, 1975, petitioner's filing status was shown as "single." Two small adjustments, one increasing and one decreasing petitioner's income as reported, with the net adjustment being a decrease in the amount of $ 333.50, were made and petitioner's tax was computed on the basis of a filing status of "single," resulting in an additional tax shown of $ 215.20. On the second page of the "Revised Report" furnished to petitioner the following appeared under "Explanation of Adjustments:" B. Head of Household status has been disallowed. Your unmarried child must live together with you for the entire year in the household you maintain as the principal residence of both you and the child. Petitioner went over the report and obtained the advice of an accountant. Thereafter he agreed to the adjustment and signed a document agreeing to pay the $ 215.20. In February of 1976 petitioner received a statement from the Internal Revenue Service in the amount of $ 812.44 with the notation that he could not file as single but must file as a married person filing a separate return. Petitioner *282 expressed a disagreement with this statement and was told to file a request for a review by a conferee of the Internal Revenue Service. On April 6, 1976, petitioner had a meeting with a member of the Conference Section of the Internal Revenue Service in Newark and submitted evidence he had brought with him to the conferee. After the discussion between petitioner and the conferee, the conferee conferred with attorneys for the Internal Revenue Service and thereafter petitioner and the conferee agreed that petitioner's correct additional tax liability was only in the total amount of $ 142.05, and the conferee asked petitioner to give him a check in this amount. Petitioner drew a check, dated April 6, 1976, made payable to the Internal Revenue Service in the amount of $ 142.05 and handed it to the conferee.
On April 13, 1976, petitioner's check was returned to him with no explanation. Petitioner then telephoned the conferee and was advised that the conferee had been overruled by the Appellate Division of the Internal Revenue Service and that his tax liability was $ 692. Petitioner was sent a written notice to this effect. Petitioner then requested and had set up a meeting with *283 the Appellate Division. At this meeting he was told that the Appellate Division did not have the jurisdiction to overrule the decision made with respect to his tax liability and that the next step he would have to take would be to take the matter to the United States Tax Court.
The total amount of tax paid by petitioner with his return and Mrs. Forrest with her return for the year 1974 is equal to the tax which would be properly reportable by Mr. and Mrs. Forest on a joint return for the year 1974. On January 6, 1976, a statutory notice of deficiency showing a deficiency in petitioner's income tax in the amount of $ 812.44 was issued to petitioner. Two adjustments were made in this notice which are not here in issue and the following explanation was given with respect to petitioner's filing status: Explanation of Change in Filing Status
It is determined that you were still legally married at the completion of the taxable year ended December 31, 1974. Since you and your wife filed separate returns, you are not entitled to compute your tax using the rate schedules for single or head of household for the taxable year ended December 31, 1974. Your tax should be computed *284 using the rate schedule for married taxpayers filing separate returns. Accordingly, your tax has been increased in the amount of $ 812.44. Petitioner, on January 27, 1977, addressed a letter to this Court which was filed as a petition, and on February 10, 1977, filed an amended petition in which he placed in issue $ 670.39 of the deficiency determined by respondent, stating "Amount I believe owed - $ 142.05." In this amended petition petitioner alleged that he was told by the Internal Revenue Service to file as head of a household rather than joint and also alleged inconsistent and improper handling by the Internal Revenue Service of his return because of the numerous changes in position taken by employees or agents of the Internal Revenue Service.Petitioner further alleged in his petition that he should be entitled to file as a single individual since he was legally separated from his spouse under a decree of divorce or of separate maintenance. At the trial petitioner contended that he should be entitled to file as a single individual or in the alternative, if he was wrong in this contention that "if I was advised correctly by the IRS that * * * I could not file head of household, *285 I would certainly have elected to file jointly for I'm not a stupid person and am not willing to throw away $ 1,000.00, because that's the difference." Petitioner did not specifically contend that he should be entitled to file a joint return with his former wife, stating that he had discussed the matter with respondent's attorney and told him "If you allow me to file the way I would have elected to file at the beginning, if it was told to me that the proper way -- I'll file that way now," and that "they advised me that I can't file that way now, because I've elected to come to this Court." [1]
*286 OPINION Section 1(a), (c) and (d), I.R.C. 1954, [2] provides the tax rates for married individuals filing joint returns, unmarried individuals and married individuals filing separate returns, respectively. Each of these subsections refers to "married individual (as defined in section 143.)" Section 1(b) provides for the tax rates for the head of a household as defined in section 2(b). Section 2(c) provides that for the purposes of section 2(a) and (b) a person who is not considered married under section 143(b) shall be considered as unmarried. Section 143[3] provides that the determination of whether an individual is married shall be made as of the close of the taxable year, and that "An individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married." This section further provides, with respect to married individuals living apart, that if such an individual maintains a household which constitutes for more than one-half of the taxable year the principal place of abode of a dependent who is a son or daughter and with respect *287 to whom such individual is entitled to a deduction for the taxable year under section 151, and such individual furnished over half the cost of maintaining such household during the taxable year, and "during the entire taxable year such individual's spouse is not a member of such household," such individual shall not be considered as married. *288 Clearly, under New Jersey law petitioner was not legally separated from his wife at the end of 1974.In fact, petitioner and respondent stipulated that "The petitioner and his former wife were not legally separated during the taxable year 1974." Since this is a stipulation of law and not of fact, we would not be bound to accept it if it were legally incorrect. However, this stipulation is a correct interpretation of the New Jersey law. See Capodanno v. Commissioner, 69 T.C. 638 (1978), in which we held that an order for pendentelite support in New Jersey did not effect a legal separation. See also Lavino v. Lavino,23 N.J. 635, 130 A.2d 369 (1957); Weinkrantz v. Weinkrantz,129 N.J. Super. 28, 322 A.2d 184 (1974). As we pointed out in the Capodanno case, for Federal tax purposes the marital status of a taxpayer is determined by the law of the state of the marital domicile. We therefore conclude, independent of the stipulation of *289 the parties, that petitioner was not legally separated from his wife at the end of 1974 and was not entitled to file his return as a single individual. The parties also stipulated that petitioner was not entitled to file as head of a household for the year 1974. Again, this is a stipulation of a legal conclusion but also a correct one. The facts here clearly show that during the first half of 1974 petitioner's spouse was a member of the household in which petitioner and his son, David, resided. Therefore, even though David was the dependent of petitioner for the year 1974 within the meaning of section 152 and resided in petitioner's household for more than one-half of the taxable year, petitioner fails to meet the qualification of section 143(b)(3) and therefore cannot be considered as not married at the end of 1974. See section 143(b)(3), quoted in Footnote 3. However, it is clear that since petitioner was legally married at the end of 1974 he was entitled to file a joint return with his wife. See Eccles v. Commissioner,19 T.C. 1049 (1953), affd. per curiam 208 F.2d 796 (4th Cir. 1953); Rev. Rul. 75-536, 1975-2 C.B. 462. From *290 the facts in this record, it appears that since petitioner filed a separate return from his wife he would have been entitled under section 6013(b)[4] at any time before April 15, 1978, to elect with his wife to file a joint return, except that he could not make the election to file a joint return with his wife after a deficiency notice was mailed to him and he filed a petition with this Court. Section 6013(b)(2)(C). *291 Since petitioner was appearing without counsel, it was difficult to follow the contentions he was making. Petitioner did not file a brief. However, the Court assumed his complaints with respect to the various types of information he received from agents or employees of the Internal Revenue Service were his attempt to allege and prove estoppel. At the trial the Court stated it would consider that petitioner properly alleged that respondent was estopped to require him to file as an unmarried individual filing a separate return. Although petitioner did not specifically allege that he should now be permitted to file a joint return, from the statement he made at the trial his petition has been considered as if this issue were raised. It is difficult to conceive that one individual would receive as much misinformation and poor consideration of his tax liability for one year from various employees of the Internal Revenue Service as petitioner received. However, we have not only petitioner's testimony, which was straight forward and believable, but also documentary evidence to show the total lack of expertise of the employees of the Revenue Service who handled petitioner's tax liability *292 and the fact that misrepresentations of law were consistently made to petitioner. It appears that petitioner was not aware until after he filed a petition with this Court that once having filed separate returns he and his wife could elect to file jointly. Even though the failure of employees of the Internal Revenue Service at any level, and particularly at the level of the Appellate Division, to inform petitioner of the statutory provisions for an election to file a joint return after having filed separate returns is not to be condoned, in our view it does not estop the Commissioner from determining a deficiency against petitioner on the basis that the deficiency in this case is determined. The right of a taxpayer to elect to file a joint return after having filed separate returns is clear.Section 6013(b) sets forth the right of individuals to make a joint return for a taxable year after having filed a separate return. Subparagraph (b)(2) of section 6013 states the limitations for making the election. The facts here indicate that at the time the deficiency notice in this case was issued *293 to petitioner none of these limitations applied to him. However, after he filed a petition with this Court he failed to meet the limitation contained in subparagraph (C) of section 6013(b)(2). All of petitioner's conferences with Internal Revenue Service employees and officials were prior to April 15, 1978, so the statutory period for making the election to file a joint return had not expired when any of these conferences were held. The final decree of divorce, which was filed on October 24, 1975, required petitioner to be responsible for all income taxes prior to the date of the entry of that decree. Most of petitioner's conferences with Internal Revenue Service employees were subsequent to the date of the entry of the final decree of divorce. Therefore, Mrs. Forrest would have had no contrary interest to petitioner's with respect to the filing of a joint return for the year 1974.Probably she would have been required to consent to filing such an election if she otherwise was unwilling. She was directed by the court to sign a joint return for 1973. See also Weinkrantz v. Weinkrantz,supra,322 A.2d at 189. The law is clear that *294 a taxpayer's reliance on mistaken legal interpretations given to him by agents of respondent does not estop respondent from making a correct determination of that taxpayer's tax liability. Demirjian v. Commissioner,54 T.C. 1691, 1701 (1970), affd. 457 F.2d 1 (3d Cir. 1972). See also Automobile Club of Michigan v. Commissioner,353 U.S. 180 (1957); Norden-Ketay Corp. v. Commissioner,319 F.2d 902 (2d Cir. 1963), affirming a Memorandum Opinion of this Court. Even if the failure of the Internal Revenue Service employees, including officials of the Appellate Division, to inform petitioner of the law with respect to an election to file a joint return after having filed separate returns could be considered as an official act of the Commissioner, [5] estoppel would not exist here. As we pointed out in Estate of Emerson v. Commissioner,67 T.C. 612, 617-618 (1977): The essential elements of estoppel are not present in the instant case. These elements are: (1) There must be a false representation or wrongful misleading silence; (2) the error must be in *295 a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed. Morris G. Underwood,63 T.C. 468 (1975), affd. 535 F.2d 309 (5th Cir. 1976). * * * In Underwood v. Commissioner,63 T.C. 468, 477 (1975), we quoted substantially the same elements of estoppel from the opinion in Van Antwerp v. United States,92 F.2d 871, 875 (9th Cir. 1937). The one case which we found that, on first reading, might indicate that a mistake by the Commissioner which bordered on a mistake of law could cause equitable estoppel to apply to the Commissioner is Schuster v. Commissioner,312 F.2d 311 (9th Cir. 1962), affirming in part and reversing in part 32 T.C. 998 (1959). In our view, in the Schuster case the Court in *296 effect considered the audit of the Federal estate tax return which was furnished to the trust beneficiary concluding that the trust corpus was not includable in the taxable estate of the decedent to be a misrepresentation of fact rather than law. If Schuster v. Commissioner,supra, merely holds that a factual misrepresentation made by the Commissioner to a taxpayer, on which the taxpayer acts to his detriment, is cause for applying equitable estoppel against the Commissioner, it is in line with a number of other cases. If, in fact, the only misrepresentation made by the Commissioner in the Schuster case were to be considered an incorrect interpretation of law, it would be encumbent on us to independently determine whether we would follow that portion of the case which partially reversed our holding.See Schwartz v. Commissioner,40 T.C. 191, 193 (1963), where we indicated that we would not do so. In any event, the facts in the instant case do not fall within the situation which the Circuit Court concluded existed in the Schuster case. At all times when petitioner was discussing his tax liability with representatives of the Internal *297 Revenue Service the law was clear that the fact he and Mrs. Forrest had previously filed separate returns would not bar them from electing to file a joint return. Had petitioner consulted someone highly informed with respect to tax law, this fact would have been brought to his attention. Even though in our view representatives of the Commissioner, and particularly of the Appellate Division, should make every effort to inform a taxpayer during the course of numerous conferences of the opportunity afforded by the statute to file a return in such a manner as to legally pay a lesser tax, as a matter of law we consider it incorrect to conclude that failure to do so amounts to estoppel. Decision will be entered for the respondent. Footnotes
1. Although petitioner did not specifically testify to the fact, in his opening statement to the Court he stated that in March of 1975 he was separated from his wife and when he was preparing to file his 1974 return he talked to her attorney on the telephone. He stated that his wife's attorney asked him how he would suggest or how he was intending to file his tax return and suggested that he and his wife file a joint return. Petitioner told his wife's attorney he would let him know later if he desired to file a joint return with his wife and that it was following this conversation with his wife's attorney that he called the Internal Revenue Service and received the information that he could choose either to file as head of household or a joint return. Petitioner, after getting this information and computing his tax both on the basis of head of a household and a joint return, telephoned his wife's attorney and told him that he had decided to file as head of a household and not file a joint return. Petitioner put in evidence a computation showing that the tax liability on the joint return with his wife for 1974 would be $ 4,070.04 as compared to a tax liability of $ 4,751.26 computed on the basis of a married person filing a separate return.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
3. SEC. 143.DETERMINATION OF MARITAL STATUS. (a) General Rule.--For purposes of this part-- (1) The determination of whether an individual is married shall be made as of the close of his taxable year; except that if his spouse dies during his taxable year such determination shall be made as of the time of such death; and (2) An individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married. (b) Certain Married Individuals Living Apart.--For purposes of this part, if-- (1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a dependent (A) who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the individual, and (B) with respect to whom such individual is entitled to a deduction for the taxable year under section 151, (2) such individual furnishes over half of the cost of maintaining such household during the taxable year, and (3) during the entire taxable year such individual's spouse is not a member of such household, such individual shall not be considered as married.↩
4. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. * * *
(b) Joint Return After Filing Separate Return.-- (1) In general.-- Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. A joint return filed by the husband and wife under this subsection shall constitute the return of the husband and wife for such taxable year, and all payments, credits, refunds, or other repayments made or allowed with respect to the separate return of either spouse for such taxable year shall be taken into account in determining the extent to which the tax based upon the joint return has been paid. If a joint return is made under this subsection, any election (other than the election to file a separate return) made by either spouse in his separate return for such taxable year with respect to the treatment of any income, deduction, or credit of such spouse shall not be changed in the making of the joint return where such election would have been irrevocable if the joint return had not been made.If a joint return is made under this subsection after the death of either spouse, such return with respect to the decedent can be made only by his executor or administrator. (2) Limitations for making of election.--The election provided for in paragraph (1) may not be made-- (A) unless there is paid in full at or before the time of the filing of the joint return the amount shown as tax upon such joint return; or (B) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse); or (C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court of the United States within the time prescribed in section 6213; or (D) after either spouse has commenced a suit in any court for the recovery of any part of the tax for such taxable year; or (E) after either spouse has entered into a closing agreement under section 7121 with respect to such taxable year, or after any civil or criminal case arising against either spouse with respect to such taxable year has been compromised under section 7122↩.
5. It is to be noted that the deficiency notice in this case issued in the name of the Commissioner was issued by the Assistant Chief, Appellate Branch Office, Newark, New Jersey.↩