CARROLL A. ONSTOTT AND N. NAOMI ONSTOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Onstott v. Commissioner
Docket No. 10246-77.
United States Tax Court
T.C. Memo 1981-50; 1981 Tax Ct. Memo LEXIS 692; 41 T.C.M. (CCH) 827; T.C.M. (RIA) 81050; February 10, 1981. *692 Petitioner-husband was the pastor of a local, independent church in Rapid City, South Dakota. Held: (1) Petitioners' deductible business expenses are determined. Sec. 162, I.R.C. 1954. (2) Notice of deficiency is valid. Carroll A. Onstott and N. Naomi Onstott, pro se. David J. Ryan, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1975 in the amount of $ 431.65. After concession of one issue by respondent, the issues for decision are as follows: (1) Whether petitioners are entitled to deduct a series of expenses as having been paid or incurred in connection with petitioner Carroll A. Onstott's employment as a clergyman, and if so, the amounts of such deductions, [1] and (2) Whether the notice of deficiency is valid. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Carroll A. Onstott (hereinafter *693 sometimes referred to as "Carroll") and N. Naomi Onstott (hereinafter sometimes referred to as "Naomi"), husband and wife, resided in Rapid City, Suth Dakota. During 1975, Carroll was the pastor of a fundamental Baptist church, an independent unaffiliated church located in Rapid City, South Dakota. Petitioners resided in a parsonage provided by the chaurch. In addition to the use of the parsonage, Carroll received $ 7,200 from the church in 1975 as an "honorarium" in connection with his employment as clergyman. During 1975, men's prayer breakfasts were held at the parsonage almost every Friday. From January 1975 through September 1975, Naomi prepared and served breakfast to the participants. Naomi recorded the number of men attending each breakfast on a calendar kept in the parsonage kitchen; she usually made these entries daily, but occasionally made them one or two days later. From October 1975 through December 1975, Carroll prepared the meals for the prayer breakfasts because Naomi was ill; he did not keep a record of the men attending the breakfasts. The prayer breakfasts provided a time of study and fellowship; they united the men. Neither the congregation nor its officials *694 specifically directed either petitioner to operate a prayer breakfast program. The program was operated by petitioners as part of Carroll's work as the pastor of the congregation. Petitioners spent about $ 150 on these prayer breakfasts in 1975. From time to time during 1975, petitioners provided meals and lodging in the parsonage for a visiting choir group or for families who needed a meal or a place to stay while looking for a job, or while stalled in town because their car broke down. Some meals were also provided to church members and others who assisted in the construction of an addition to the church building during the summer. Naomi recorded on the kitchen calendar on the appropriate date the number of people to whom she served individual meals and designated the meal as "breakfast", "lunch", "dinner", or "supper"; she also recorded the number of people staying overnight at the parsonage and the duration of their stay. Petitioners spent about $ 350 on these meals in 1975. From May 18, 1975, through September 8, 1975, petitioners provided meals and lodging in the parsonage for a young man who donated his time to help build an addition to the church building. Petitioners *695 spent about $ 225 on these meals. Petitioners used their automobile to run errands for the church, including the purchase of office supplies and building materials, to take the parsonage guests wherever they requested, to take long-distance trips, and to conduct other church business. During 1975, petitioners used their car to travel to conferences in Helena, Montana, in Douglas, Wyoming, and in Denver, Colorado; and to camp near Casper, Wyoming. Petitioners kept a record of their church-related mileage by writing down the number of miles of each church-related trip, totaling the miles weekly and monthly, and transferring the monthly total to their kitchen calendar. The kitchen calendar contained mileage notations totaling 7,140 miles. Petitioners' automobile was driven altogether about 10,000 to 12,000 miles during 1975. During 1975, petitioners maintained an office in the parsonage containing a typewriter, a mimeograph machine, and a library of various books, pamphlets, and periodicals available for use by church members. Petitioners provided the supplies for the typewriter and mimeograph machine that they used to publish the church bulletin. Petitioners used the books in their *696 library for the church's study programs and replaced the books when they became too worn or outdated for such use. Petitioners acquired periodicals to keep them up to date on ecclesiastical procedures, movements, and trends. Petitioners' checking account was charged an aggregate of $ 50 in 1975 for "special handling of insufficient funds" on eight dates; these were the only bank charges incurred by petitioners during 1975. This checking account was in both petitioners' names and was used for both business and personal purposes. Petitioners were not reimbursed for any of the foregoing expenses. They did not seek reimbursement and, as part of the church's honorarium method of compensating Carroll, were not expected to seek reimbursement. On their 1975 Federal individual income tax return, petitioners deducted, as expenses of Carroll's trade or business of being a clergyman, the items and amounts set forth in table 1. Table 1 Office supplies, books, upkeep
$ 278.01
Auto expense at 15" P.M.
900.00
Meals and lodging away from home
48.52
Hired labor
25.76
Bank charges
56.92
Men's prayer breakfast meals
served and other meals and
lodging
1,030.00
Total
$ 2,339.21 Respondent disallowed petitioners' *697 business expense deductions in full. OPINION 1. Trade or Business Expenses
Petitioners claim that they incurred the expenses listed in table 1 in carrying on Carroll's trade or business as a clergyman, and therefore are entitled to deduct these amounts as trade or business expenses. Respondent maintains petitioners are not entitled to deductions for these amounts because (1) the expenses were not ordinary and necessary business expenses under section 162, [2](2) petitioners have failed to establish that they were not entitled to reimbursement for their business expenses, (3) petitioners have not satisfied the substantiation requirements of section 274(d) for their traveling expenses, and (4) petitioners have not substantiated the amounts of certain of the claimed expenses. On the basis of the entire record, we have determined petitioners' deductible business expenses herein. Deuctions are allowed under section 162[3] for the taxpayer's ordinary and necessary expenses in carrying on a trade or business. E.g., McGowan v. Commissioner,67 T.C. 599, 611, 612 (1976). *698 However, under section 262, [4] personal expenses generally are not deductible.
People do things for many reasons. Petitioners appear to have successfully unified, or integrated, their personal and business lives. Their personal religious obligations and the obligations of Carroll's profession did not conflict. In the instant case, we are called upon to identify those elements in the blend of petitioners' lives in 1975 that are directly related to Carroll's trade or business rather than to petitioners' personal activities, to the extent we can do so on the basis of the largely inadequate record in the instant case. Whether an expenditure is directly related to a trade or business and whether it is ordinary and necessary generally are questions of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943). *699 Respondent's determinations as to matters of fact in the notice of deficiency are presumed to be correct and petitioners have the burden of showing that these determinations are wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
a. Reimbursement
Respondent asserts, and we agree, that if a taxpayer is entitled to reimbursement from his employer for an expenditure made in connection with his status as an employee, no trade or business expense deduction is allowed. Heidt v. Commissioner,274 F.2d 25 (CA7 1959), affg. a Memorandum Opinion of this Court; [5]Kennelly v. Commissioner,56 T.C. 936, 943 (1971), affd. without opinion 456 F.2d 1335 (CA2 1972); Stolk v. Commissioner,40 T.C. 345, 356 (1963), affd. per curiam 326 F.2d 760 (CA2 1964); Podems v. Commissioner,24 T.C. 21, 22-23 (1955). The burden is on petitioners to prove that Carroll was not entitled to reimbursement.
We have found, on the basis of the record before us, that (1) petitioners were not reimbursed and (2) they were not expected to seek reimbursement, as part of the church's honorarium method of compensating Carroll. We hold that petitioners *700 have met their burden of proof as to this element of their case. (Under the circumstances, we do not decide whether Carroll was an employee or was self-employed.) b. Meals furnished by petitioners
Petitioners claimed a business expense deduction in 1975 for meals furnished (1) at the men's prayer breakfasts, (2) to the various guests at the parsonage, and (3) to a young man who helped construct an addition to the church. We agree with petitioners as to the cost of meals furnished at the men's prayer breakfasts. We agree with respondent as to the other meals. We are persuaded that the prayer breakfast program was directly related to Carroll's employment as clergyman. During 1975, the prayer breakfasts were held regularly. Carroll's purpose was to conduct religious study and promote fellowship. Such a purpose is clearly within the functions of a pastor of a congregation. The fact that the church did not specifically require Carroll to hold these breakfasts is a factor, but is not determinative. We are satisfied that Carroll was given broad latitude in fulfilling his responsibilities as clergyman, and that this program was conducted within that broad authorization. With regard *701 to the other meals furnished, we conclude that petitioners have failed to bear their burden of proving that the costs of such meals are directly related to Carroll's imcomeproducing employment. [6] On this issue, we hold that petitioners are entitled to deduct $ 150 in cost of meals furnished by them at the church's prayer breakfasts. c. Automobile and travel expenses
Petitioners claimed business expense deductions for auto expense and for meals and lodging away from home in the amounts of $ 900 and $ 48.52, respectively. We agree with petitioners but only as to the use of their automobile for other than traveling expenses. We agree with respondent as to the traveling expenses. *702 Section 162(a)(2)[7] *703 allows a deduction for traveling expenses while away from home in the pursuit of a trade or business. However, section 274[8] provides that no deduction shall be allowed under section 162 for any traveling expense, including meals and lodging while away from home, unless the taxpayer substantiates certain matters by adequate records or by sufficient evidence corroborating his own statement. Under section 1.274-5(c)(2), Income Tax Regs., in order to meet the "adequate records" requirement, a taxpayer shall maintain an account book, diary, statement of expense, or similar record and documentary evidence (such as receipts, paid bills, or similar evidence) which, when combined, establish each element of the expense set forth in section 274(d). If the taxpayer lacks adequate records, a detailed written or oral statement by the taxpayer and sufficient other corroborative evidence is required. Sec. 1.274-5(c)(3), Income Tax Regs. Carroll testified that he used his automobile to drive to conferences in Helena, Montana, in Douglas, *704 Wyoming, and in Denver, Colorado, and to camp near Casper, Wyoming. Petitioners' kitchen calendar contained the notation "North Platte" for May 31, 1975, through June 3, 1975, and "camp" for the first two days in August 1975. No other travel information was submitted for our consideration, either as to use of the automobile or as to the cost of meals and lodging. Petitioners clearly have failed to meet the substantiation requirements of section 274(d). There is no leeway for approximation under section 274(d). Sanford v. Commissioner,50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (CA2 1969); sec. 1.274-5(a), Income Tax Regs. We conclude petitioners are not entitled to deduct their traveling expenses, including (1) auto expenses to the extent incurred for traveling away from home and (2) meals and lodging. Petitioners also incurred auto expenses in conducting church business and in driving the parsonage guests wherever they requested. We have already decided that petitioners' expenses incurred on behalf of the parsonage guests have not been shown to be directly related to Carroll's trade or business as a clergyman. (b. Meals furnished by Petitioners,supra.) It follows that *705 petitioners are not entitled to deduct auto expenses incurred on behalf of the parsonage guests. However, under section 162(a) petitioners are entitled to deduct auto expenses incurred on local trips while carrying out Carroll's responsibilities as a clergyman. Boyer v. Commissioner,69 T.C. 521, 541-542 (1977). As to these costs, petitioners do not have to meet the test of section 274. Gestrich v. Commissioner,74 T.C. 525, 530-531 (1980), on appeal (CA3 Dec. 17, 1980). Petitioners' records do not reveal the mileage for this purpose. Weighing heavily against petitioners whose inexactitude is of their own making ( Cohan v. Commissioner,39 F.2d 540, 543-544 (CA2 1930)), we hold that petitioners are entitled to deduct $ 400 in auto expenses. d. Office expenses
Petitioners claimed business expense deductions for $ 278.01 as "office supplies, books, upkeep". We agree with petitioners that some amount is deductible for this purpose. Carroll's office was in the parsonage. Petitioners purchased office supplies and books used in the office in Carroll's role as clergyman. Despite questioning by the Court, Carroll gave no explanation of how petitioners arrived at the impressively precise *706 amount of $ 278.01. We have no basis for evaluating petitioners' assurances that their claim is reasonable. Although petitioners assured us that they had checks to support most of the claimed amounts, they could not tell us what the checks showed or what were the approximate amounts spent on any category of expenses, such as books. Nevertheless, we are convinced that petitioners incurred some expenses during 1975 for the aforesaid purposes, and that such expenses are deductible. Doing the best we can under these circumstances ( Cohan v. Commissioner,supra), we hold that petitioners are entitled to deduct $ 100 in office supplies, books, and upkeep. e. Bank charges
Petitioners claimed business expense deductions for $ 56.92 as bank charges. We agree with respondent.
At trial, Carroll testified that all of the charges made by the bank were listed on exhibit 2; they totaled $ 50. Despite questioning by the Court, Carroll gave no explanation of how the bank charges related to his business activities, rather than his or Naomi's nonbusiness checking. On answering brief, petitioners assert, for the first time, that the bank charges were incurred as a result of the church's construction. *707 Mere statements on brief do not constitute evidence. Evans v. Commissioner,48 T.C. 704, 709 (1967); Rule 143(b), Tax Court Rules of Practice and Procedure.
Petitioners have failed to bear their burden of proof. On this issue, we hold for respondent. f. Hired labor
Petitioners claimed business expense deductions for $ 25.76 as hired labor. We agree with respondent. No evidence was presented on this point. On answering brief, petitioners assert, for the first time, that they spent $ 25.76 for a speaker to fill in for Carroll in his absence from the pulpit. Mere statements on brief do not constitute evidence. Evans v. Commissioner,supra;Rule 143(b), Tax Court Rules of Practice and Procedure.
Petitioners have failed to bear their burden of proof. On this issue, we hold for respondent. 2. Validity of Notice of Deficiency
Petitioners assert that the notice of deficiency should be disregarded because (1) revenue agents of the Internal Revenue Service (hereinafter referred to as "the Service") are biased; (2) a revenue agent of the Service told petitioners that the case would be dismissed; and (3) there is no factual basis for the deficiency notice, and therefore the notice *708 is unconstitutional. None of these arguments is persuasive. First, there is no evidence in the record supporting a conclusion that the Service's revenue agents were biased in the instant case. Second, respondent is generally not bound by mistaken legal interpretations given by the Service's revenue agents, e.g., Demirjian v. Commissioner,54 T.C. 1691, 1701 (1970), affd. 457 F.2d 1, 6-7 (CA3 1972), and in any event petitioners have not shown they detrimentally relied on such statements. Third, by asserting that there is no factual basis for the notice of deficiency, petitioners are, in essence, asking the Court to "look behind" the notice of deficiency.This Court proceeds on the basis of the notice of deficiency and a trial de novo (e.g., Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974)), and we see no compelling reason to depart from this practice in the instant case. Accordingly, petitioners have the burden of showing that the notice of deficiency is erroneous; this imposition of the burden of proof is constitutional. Rockwell v. Commissioner,512 F.2d 882, 887 (CA9 1975), affg. a Memorandum Opinion of this Court. [9]
We decline to hold the *709 notice of deficiency invalid. On this issue, we hold for respondent. After the trial in the instant case, the Court urged the parties to reach a settlement. On brief, petitioners have presented the Court with copies of the parties' after-trial correspondence regarding settlement.Apparently, this was presented in order to reflect adversely on respondent's bona fides and reflect favorable on petitioners' sense of outrage. We see no reason to acknowledge any such reflection. Firstly, the Court urged the parties to settle, and respondent conceded the medical expense deduction adjustement (but see note 1, supra); clearly, respondent would be expected to suggest to petitioners that both sides agree to a lesser deficiency than the amount asserted in the notice of deficiency. Secondly, statements on brief do not constitute evidence. Evans v. Commissioner,supra;Rule 143(b), Tax Court Rules of Practice and Procedure.Thirdly, evidence of the parties' settlement negotiations in the instant case is not admissible to prove the amount, if any, of petitioners' income tax deficiency in this case. Rule 408, Federal Rules of Evidence.[10] We have given no weight to this settlement correspondence. *710 Petitioners impressed us as being sincere and honest. This has enabled us to conclude that petitioners have had some small success in bearing their burden of proof despite the fact the record contains almost nothing by way of business records. We are sensitive to petitioners' concern about secular inspection of records *711 of religious activities. However, petitioners must understand that trade or business deductions for secular income tax purposes should be supported by trade or business records that can be examined by secular tax officials (with rare restrictions, e.g., sec. 7605(c)) and can be presented to secular courts. Decision will be entered under Rule 155.
Footnotes
1. The amount of deductible medical expenses is solely derviative; it depends on our resolution of the business expenses issue.↩
2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.↩
3. SEC 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
4. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
5. T.C. Memo. 1959-31↩.
6. Petitioners have separated their claimed charitable contribution deductions from their claimed business expense deductions. (Respondent has not disallowed any of petitioners' $ 1,754 of claimed charitable contribution deductions.) Since petitioners do not claim any charitable contribution deductions for the cost of these meals, we have made no findings as to whether their cost was incurred with the specific donative intent necessary to support such deductions. See Smith v. Commissioner,60 T.C. 988↩ (1973).
7. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagent under the circumstances) while away from home in the pursuit of a trade or business; * * * 8. Section 274 provides, in relevant part, as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 * * * for any traveling expense (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * * (C) the business purpose of the expense or other item, * * * (h) Regulatory Authority.--The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, * * * [The subsequent amendments of this provision by sections 602(a) and 1906(b)(13)[sic](A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1572, 1834, do not affect the instant case.]↩
9. T.C. Memo. 1972-133↩.
10. Rule 408. Compromise and Offers to Compromise Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promissing to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.↩